158 Pa. Commonwealth Ct. 221 (1993)
631 A.2d 767
PENNSYLVANIA INSTITUTIONAL HEALTH SERVICES, INC.; Carl A. Hoffman; John Lesniewski; Edward Russek; Paul F. Phillips; Robert Davis; and Dana Powell, Petitioners,
v.
COMMONWEALTH Of Pennsylvania, DEPARTMENT OF CORRECTIONS; Laurence J. Reid, as Executive Deputy Commissioner, Department of Corrections, Michael H. Hershock, Secretary of the Budget, and David L. Jannetta, Secretary of General Services, Respondents.
Commonwealth Court of Pennsylvania.
Argued May 14, 1993.
Decided August 31, 1993.
*223 Joshua D. Lock and Lee C. Swartz, for petitioners.
Joseph R. Thomas, Deputy Gen. Counsel, for respondents.
Before DOYLE and SMITH, JJ., and LORD, Senior Judge.
SMITH, Judge.
Respondents have filed preliminary objections to the petition for review in the nature of a complaint in equity and for declaratory judgment filed by Petitioners in this Court's original jurisdiction on January 25, 1993 challenging the implementation of contractor suspension and debarment procedures promulgated by Management Directive 215.9, as amended (1991) (entitled "Contractor Responsibility Program"). Respondents have essentially objected to the action on the grounds that Petitioners have failed to state a cause of action cognizable at law and that they have failed to exhaust available administrative remedies. Petitioners, a Pennsylvania health services corporation and individual doctors and psychiatrists associated or affiliated with Pennsylvania Institutional Health Services, Inc. (PIHS), were awarded a four-year contract on June 1, 1989 with the Department of Corrections (Department) to provide health care services at the State Correctional Institution at Camp Hill.
*224 Respondent Executive Deputy Commissioner Laurence J. Reid notified Petitioners by letter dated August 5, 1992 that they were suspended from Commonwealth contracting for three months pending an investigation into the death of an inmate at the State Correctional Institution. Petitioners were later notified by letter dated November 5, 1992 that the suspension was extended for an additional three months pending the outcome of the investigation; and by letter dated January 5, 1993, they were given notice that based upon the investigation, the Department contemplated debarment of Petitioners from contracting with the Commonwealth. Petitioners were given twenty-one days to respond to the proposed debarment. However, on January 25, 1993, Petitioners instead filed their application with this Court seeking injunctive relief to enjoin Respondents from proceeding with the debarment action.[1]
The notice of suspension was issued pursuant to Management Directive 215.9 which was developed by the Secretaries of the Budget and General Services at the direction of the Governor of Pennsylvania to implement his Executive Order 1990-3 and was issued June 29, 1990. The management directive, originally dated on July 17, 1990 and later amended on December 30, 1991 and July 17, 1992, was intended to develop procedures for suspension and debarment of contractors doing business with the Commonwealth; and according to the Department, was to establish a program to identify, evaluate and sanction contractors failing to meet the Commonwealth's standards of responsibility or who engaged in other deficient or improper performance or conduct. According to the procedures established in the directive, the suspending official, Mr. Reid, was delegated the authority to initiate debarment proceedings and to determine debarment of those contractors doing business with the Commonwealth.
*225 This dual capacity and the Respondents failure to establish procedures to govern debarment hearings are the bases of Petitioners challenge that the management directive is constitutionally infirm and violative of the Pennsylvania Supreme Court's decision in Lyness v. State Board of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992), where the Court found a violation of due process when prosecutorial and adjudicatory functions are commingled by an agency. Petitioners have also challenged the issuance of the management directive as violative of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102-1602 in that Respondents' procedures should have been promulgated as a regulation under that law.[2]
This Court may sustain preliminary objections and dismiss suit only in cases which are free and clear from doubt and where clearly warranted by the record. The preliminary objections filed here are in the nature of a demurrer and may be sustained only where Petitioners have failed to state a claim upon which relief may be granted and the complaint is clearly insufficient on its face to establish any right to relief. See Wurth v. City of Philadelphia, 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990). See also County of Allegheny v. Commonwealth, 507 Pa. 360, 490 A.2d 402 (1985). In testing the legal sufficiency of a complaint, all well-plead allegations of material fact as well as any reasonable inferences deducible therefrom must be accepted as true. Wurth.
Respondents argue that their preliminary objections should be sustained and Petitioners' declaratory judgment action dismissed since no justiciable issue has been raised in these proceedings. They contend that Petitioners do not argue that the management directive was not issued in compliance with the Directives Management System, 4 Pa.Code §§ 1.1-1.4, but rather that implementation of the Governor's contractor responsibility *226 program was by management directive instead of by regulation. Respondents maintain, however, that there is no requirement to promulgate suspension and debarment procedures by regulation and that because the executive order is either a communication by the Governor to subordinate officials to execute executive branch duties or an order to implement or supplement a statute or the constitution, Petitioners have no right to seek relief.
Respondents' position is premised upon, among others, this Court's decision in Shapp v. Butera, 22 Pa.Commonwealth Ct. 229, 348 A.2d 910 (1975), which determined that executive orders may be legally enforceable only if the order serves to implement or supplement statutes or the constitution.[3] In any event, Respondents argue that whether the executive order is a direction to subordinates to fulfill certain duties or to implement or supplement a statute or the constitution, Petitioners have failed to state a cause of action because they cannot assert a justiciable claim against a directive to subordinates and have not pled any failure by the Secretaries of the Budget and General Services to fulfill their duties, and since Petitioners may not challenge the executive order, it follows that they likewise may not challenge the management directive which flows from the order.
As to applicability of the Commonwealth Documents Law, Respondents contend that the definition of a regulation found in Section 102(12) of that law, 45 P.S. § 1102(12), does not encompass executive orders and directives such as those at issue here since they do not involve the administration of a particular statute or prescribe rules of practice or procedure before an agency, and moreover, no procedural rules are required since general rules of administrative agency practice and procedure govern any suspension or debarment proceeding before the agency. See 1 Pa.Code §§ 1.1-35.251. Under Respondents' rationale, since the management directive comports *227 with an internal agency communication rather than a regulation, it is not subject to the Commonwealth Documents Law. Respondents rely upon Calabrese Club de Monte Carmella Appeal, 30 Pa.Commonwealth Ct. 592, 374 A.2d 764 (1977) where this Court determined that internal course of conduct instructions pertaining to Liquor Control Board employees were internal in nature and not subject to requirements of the Commonwealth Documents Law. Nevertheless, Respondents' position is that since the executive order and management directive are merely statements of internal policy and procedure for subordinates within the executive branch and the suspension and debarment procedures are related to the power to contract for services, Petitioners have failed to state a cause of action sufficient to invoke this Court's jurisdiction.
Finally, Respondents argue that their preliminary objections should be sustained because an adequate administrative remedy is available to Petitioners which they chose not to utilize and that Petitioners may not assert the futility of that process to avoid a hearing before the Department. This is so particularly because Petitioners' action does not fall within the exception to the exhaustion of administrative remedies doctrine in that they do not present the "constitutional attack" necessary to invoke the exception, citing St. Clair v. Pennsylvania Board of Probation and Parole, 89 Pa.Commonwealth Ct. 561, 493 A.2d 146 (1985). Respondents characterize Petitioners' main legal challenge as involving the question of the applicability of the Commonwealth Documents Law and whether the management directive must have been promulgated as a regulation when in fact, Petitioners' main challenge is to the constitutionality of the management directive and its application to contractors doing business with the Commonwealth. Further, according to Respondents, the Lyness challenge is an insignificant roadblock in that nothing in the management directive bars the Department from separating prosecutorial and adjudicatory functions and that the process *228 in place is not procedurally defective on its face.[4]
This Court has recognized that properly promulgated management directives have the force and effect of law. Nosko v. Somerset State Hosp., 139 Pa.Commonwealth Ct. 367, 590 A.2d 844 (1991). However, in Lyness, the Supreme Court reemphasized that the decision to initiate a prosecution is such a fundamental prosecutorial function that it alone justifies terminating dual capacity where an individual who initiates the prosecution is also responsible for making the ultimate determination of guilt or innocence. The Court further stated that "[w]hether or not actual bias existed as a result of the Board acting as both prosecutor and judge is inconsequential; the potential for bias and the appearance of non-objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution." Id., 529 Pa. at 548, 605 A.2d at 1210. Accordingly, the Court determined that if more than one function is reposed in a single administrative body, walls of division must be constructed to eliminate the threat or appearance of bias.
Inasmuch as the debarring official in the matter sub judice is the same agency representative who issued the notice of suspension and would sit in judgment on the debarment as well under procedures contemplated by the management directive, Petitioners have raised a valid constitutional challenge to the implementation of the management directive which this Court must decide in the underlying declaratory judgment action. An action brought for declaratory relief under the Pennsylvania Declaratory Judgments Law, 42 Pa.C.S. §§ 7531-7551, must allege an interest by the party seeking relief which is direct, substantial and present, South Whitehall Township v. Department of Transportation, 82 Pa.Commonwealth Ct. 217, 475 A.2d 166 (1984), and must demonstrate the *229 existence of an actual controversy related to the invasion or threatened invasion of one's legal rights. Ronald H. Clark, Inc. v. Township of Hamilton, 128 Pa.Commonwealth Ct. 31, 562 A.2d 965 (1989).
As to the Department's alleged failure to promulgate regulations to implement the suspension and debarment procedures, Petitioners contend that their challenge is not to the policy decision by the Governor that contracts be awarded only to responsible contractors but is instead to the manner chosen to implement that policy and that the management directive established a procedure before the agency which could only be done by regulation. In purporting to control the acts of third party contractors by creating mandatory suspension and debarment procedures, Petitioners contend that the management directive is invalid, having no force and effect. Moreover, the cases cited by Respondents to support their proposition, that suspension and debarment procedures need not be promulgated by regulation, involve procedures implemented by regulation. Also significant is that the Commonwealth Documents Law definition of regulation includes any "rule or regulation . . . prescribing the practice or procedure before such agency." 45 P.S. § 1102(12).
As to the exhaustion of administrative remedies, Petitioners correctly state that exhaustion is not an inflexible rule and does not bar a litigant from invoking the legal or equitable jurisdiction of a court where available administrative remedies are inadequate to provide the relief sought. See Giffin v. Chronister, 151 Pa.Commonwealth Ct. 286, 616 A.2d 1070 (1992); Pennsylvania Association of Rehabilitation Facilities v. Foster, 147 Pa.Commonwealth Ct. 487, 608 A.2d 613 (1992). Where the administrative remedy itself is alleged to be unconstitutional and invalid, it would be futile for a litigant to participate in that administrative process. Chronister.
Considering the standard which this Court must follow in reviewing Respondents' preliminary objections, it is evident that the objections may not be sustained and suit dismissed since the facts pled in Petitioners' declaratory judgment action present justiciable issues to be resolved by this Court which *230 involve allegations of direct, substantial and present interests sought to be protected.[5] For this reason, Respondents' preliminary objections are overruled.

ORDER
AND NOW, this 31st day of August, 1993, the preliminary objections filed by Respondents are hereby overruled and Respondents shall file their answer to the petition for review within thirty (30) days from entry of this order. Petitioners' preliminary objections are hereby dismissed.
DOYLE, J., dissents.
NOTES
[1] An ex parte preliminary injunction order was entered on January 27, 1993 and a subsequent injunctive order on March 29, 1993 enjoining the Department from taking any further debarment proceedings until final disposition of Petitioners' underlying declaratory judgment action.
[2] A Regulation is defined as any "rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency." 45 P.S. § 1102(12).
[3] Executive orders fall within three categories: ceremonial proclamations to commemorate special days or events; communication by the Governor to subordinates of directives to execute executive branch duties; and orders which implement or supplement statutes or the constitution. Shapp.
[4] As to the due process concerns, Respondents maintain that inherent in the management directive are procedures for notice of the charges against a contractor and opportunity to be heard in recognition of the mandates prescribed by Gonzalez v. Freeman, 334 F.2d 570 (D.C.Cir. 1964), and that consistent with federal law, no due process issues are implicated in this case. Further, because the management directive is employed uniformly throughout the executive agencies, and the procedures contain the requisite due process guarantee, Petitioners have no legal basis for their due process challenge.
[5] Petitioners also filed preliminary objections to Respondents' preliminary objections claiming that Respondents have inserted facts in their preliminary objections which are not of record purportedly to bolster Respondents' claim that they may cure the Lyness constitutional defects in its hearing procedures. The pleadings filed by Petitioners indicate that no administrative hearing has yet been conducted. However, these facts, whether of record or not, will not alter the Court's decision in this matter. Finding no merit to Petitioners' preliminary objections, they will be dismissed as of course.