168 Pa. Commonwealth Ct. 135 (1994)
649 A.2d 190
PENNSYLVANIA INSTITUTIONAL HEALTH SERVICES INC.; Carl A. Hoffman; John Lesniewski; Edward Russek; Paul F. Phillips; Robert Davis; and Dana Powell, Petitioners
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF CORRECTIONS; Laurence J. Reid, as Executive Deputy Commissioner, Department of Corrections, Michael H. Hershock, Secretary of the Budget, and David L. Jannetta, Secretary of General Services, Respondents.
Commonwealth Court of Pennsylvania.
Argued April 12, 1994.
Decided October 20, 1994.
Reargument Denied November 18, 1994.
*136 Joshua D. Lock and Lee C. Swartz, for petitioners.
Joseph R. Thomas, for respondents.
Before SMITH and PELLEGRINI, JJ., and KELTON, Senior Judge.
*137 KELTON, Senior Judge.
In this equity action addressed to our original jurisdiction, we are asked to decide whether, prior to an administrative hearing, we should (1) declare that a management directive of the Secretaries of Budget and General Services is unconstitutional on its face because of violation of due process principles set forth in Lyness v. State Board of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992); and (2) enjoin further administrative hearings.
Before us are two motions for summary judgment, one filed by Petitioner Pennsylvania Institutional Health Services, Inc. (PIHS), a contractor which had been performing services for the Department of Corrections at the State Correctional Institution at Camp Hill (SCIC); and a second filed by Respondent, Department of Corrections. The Department in its December 6, 1993 motion for summary judgment seeks to have this Court 1) determine that Commonwealth contractor PIHS' Petition for Review in the Nature of a Complaint in Equity and for Declaratory Judgment (Petition) has no merit; and 2) enter judgment in favor of the Department as a matter of law.[1] PIHS in its November 30, 1993 application for summary relief seeks to have this Court 1) declare that Management Directive 215.9 (M.D. 215.9) violates Article I, Sections 1, 9 and 11 of the Pennsylvania Constitution; and 2) make our August 25, 1993 preliminary injunction permanent.
By the order which follows, we determine that the management directive does not on its face require a commingling of prosecutorial and adjudicatory functions in violation of Lyness. Therefore we grant the Department's motion for summary judgment, deny the Petitioner's motion, and transfer the matter to an appropriate administrative forum to be determined pursuant to Section 7.c. of M.D. 215.9 (hereinafter discussed).

Background
On June 29, 1990, Governor Robert P. Casey issued Executive Order 1990-3 establishing a Contractor Responsibility *138 Program for Commonwealth contractors. The case before us involves the Department of Corrections' potential debarment of a Commonwealth contractor from Commonwealth contracting pursuant to M.D. 215.9, which implements Executive Order 1990-3 and was jointly promulgated on December 30, 1991 by Secretary of Budget Michael H. Hershock and Secretary of General Services David L. Janetta.[2] The purpose of M.D. 215.9 is as follows:
1. Purpose.
. . . .
b. To ensure that the Commonwealth's contractors are competent and responsible and that the contracting process is free of fraud, waste, and abuse. To identify, declare ineligible, and sanction contractors that have rendered deficient performance or engaged in other activities that adversely affect their fitness to contract with Commonwealth agencies.
(Section 1.b of M.D. 215.9.)
On June 1, 1989, PIHS, comprised of individual doctors and psychiatrists associated or affiliated with PIHS, entered into a four year contract with the Department of Corrections to provide general health care and specialized medical services at SCIC. (Exhibit A to January 25, 1993 Petition; Paragraph 2 of February 1, 1993 Stipulation of Facts.)
The incident giving rise to the Department of Corrections' suspension involved John Edward Powell, a twenty eight year old resident of SCIC who died from dehydration on June 30, 1992. After various investigations, Department of Corrections Executive Deputy Commissioner Laurence J. Reid (Reid) notified PIHS that it was suspended from contracting with the Department of Corrections for an initial period of three months, pending an investigation into Mr. Powell's death and other contract irregularities. (Exhibit C to Petition.)
*139 Pursuant to Section 7.b.(2) of M.D. 215.9, PIHS presented information in opposition to the suspension on September 23, 1992. (Paragraph 4 of Stipulation.) On November 5, 1992, Reid notified PIHS that the suspension imposed on August 5, 1992 was being extended for another three month period, pending completion of the investigation. (Paragraph 5 of Stipulation.)
On January 6, 1993, Reid notified PIHS that the Department was considering whether to debar PIHS from Commonwealth contracting because it was allegedly "engag[ing] in acts or omissions to act which substantially contributed to the death of inmate John Edward Powell, No. BP-4653, at the State Correctional Institution at Camp Hill in July of 1992. . . ." (Exhibit E to Petition.)
In response to Reid's January 6, 1993 notification that the Department was considering debarment proceedings, PIHS filed in this Court on January 25, 1993 a Petition for Review in the Nature of a Complaint in Equity and for Declaratory Judgment and requests for preliminary injunctive relief. After considering the Department's February 22, 1993 preliminary objections to the petition and PIHS' preliminary objections to the Department's preliminary objections, this Court on August 31, 1993 overruled the Department's preliminary objections, ordered it to respond within thirty days to PIHS' petition for review and dismissed PIHS' preliminary objections to the Department's preliminary objections.[3]
Now, we consider the Department's December 6, 1993 motion for summary judgment or summary relief and PIHS' November 30, 1993 application for summary relief.[4]

Discussion
Pa.R.A.P. 1532(b) provides as follows:

*140 (b) Summary relief. At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear. . . .
In Magazine Publishers v. Department of Revenue, 151 Pa.Commonwealth Ct. 592, 596 n. 3, 618 A.2d 1056, 1058-9 n. 3 (1992), we noted that
[s]ummary relief is proper where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried and that the movant is entitled to relief as a matter of law.
Here, we must resolve the three issues presented in the motion for summary judgment or summary relief and the application for summary relief: 1) whether PIHS has identified any legally recognized constitutional or statutory rights which would be affected through application of the procedures outlined in M.D. 215.9; 2) whether M.D. 215.9 requires a commingling of prosecutorial and adjudicative functions contrary to Lyness; and 3) whether M.D. 215.9 should have been promulgated as a regulation in accordance with the Commonwealth Documents Law.[5]

1. Identification of Legally Recognized Constitutional or Statutory Rights Affected by M.D. 215.9:
PIHS argues that the Department has waived the issue of whether PIHS failed to identify a legally recognizable constitutional right affected by M.D. 215.9. We conclude, however, that, although the Department did properly preserve the issue for review in its summary judgment motion, PIHS does have a protectable property interest, in that a potential debarment might well affect, not only their rights to bid for other work within the Commonwealth, but also might affect their responses to bidding questionnaires in other jurisdictions. See e.g. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and R. v. Department of Public Welfare, 535 Pa. 440, 636 A.2d 142 (1994). We therefore do not believe that we should summarily hold that PIHS has no *141 right to be heard. The Department's right to such relief is simply not that clear.
In addition, the Department now acknowledges that PIHS has "constitutionally protected reputation interests . . . which must be protected from erroneous deprivation."[6] (Respondents' Reply Brief to Petitioners' Brief in Opposition to Respondents' Motion for Summary Judgment or Summary Relief at 3.) It argues, however, that PIHS' allegation set forth in paragraph 78 of its Petition regarding its reputation interests is the only basis upon which it can maintain this lawsuit.[7]
PIHS argues that both its reputation interests and its liberty interest in bidding for public contracts are vulnerable to violation. However, in view of our decision, we need not decide whether only one of or both of those interests are involved. In either event, PIHS would be entitled to a due process hearing. We turn, therefore, to the issue of potential commingling of prosecutorial and adjudicatory functions under Lyness.

2. Applicability of Lyness:

In Lyness v. State Board of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992), our Supreme Court held that a multimember administrative board violated a physician's due process *142 rights by commingling prosecutorial and adjudicative functions in the same board. The Court stated as follows:
Whether or not actual bias existed as a result of the board acting as both prosecutor and judge is inconsequential; the potential bias and the appearance of nonobjectivity is sufficient to create a fatal defect under the Pennsylvania Constitution.
Id., 529 Pa. at 548, 605 A.2d at 1210 (citations omitted).
Here, PIHS argues that M.D. 215.9 could be implemented in such a way as to commingle prosecutorial and adjudicative functions because Reid was the suspending official, the one who initiated the debarment proceedings and the one who would make the determination as to debarment, reasons for debarment, period of debarment and the effective date of debarment. It contends that, because M.D. 215.9 on its face mandates commingling, it is constitutionally infirm and should not be implemented. We disagree with this argument.
The Department contends that there is nothing in the directive barring the Commonwealth from separating the two functions and that the directive does not on its face vest the two functions. It acknowledges that the person who initiates the debarment acts in a prosecutorial role. However, it contends that there is nothing in the directive indicating that the "initiator" act as the adjudicator. For the following reasons, we agree with the Department.
Section 7.c. of M.D. 215.9 contains the procedures for debarment:

c. Procedures for debarment.
(1) Notice of proposal to debar. Debarment shall be initiated by advising the contractor, and any specifically named affiliate, officer, employe or other individual or entity associated with the contractor, by certified mail, return receipt requested, and regular mail:
(a) That debarment is being considered;
(b) Of the reasons for the proposed debarment in terms sufficient to put the contractor on notice of the conduct or transaction(s) upon which it is based;

*143 (c) That, within 21 days after the proposed debarment mailing date, the contractor may submit, in person, in writing, or through a representative, information relative to the proposed debarment;
(d) That the potential effect of the proposed debarment will prohibit a contractor from Commonwealth contracting and Commonwealth approved subcontracting for a specified period;
(e) If no suspension is in effect, that the notice of proposal to debar shall act as a suspension pending the outcome of the debarment proceedings.
(2) If the contractor contests the proposed debarment, the debarring official shall afford the contractor an opportunity to present information for consideration. The contractor, at its option, may present its information:

(a) By written submissions; or
(b) At a non-adversarial meeting with agency representatives, as designated by the debarring official. At this meeting, the facts will be defined, and the contractor will be afforded an opportunity for providing information regarding extenuation and mitigation of the facts in dispute; or
(c) At a hearing conducted pursuant to the Administrative Agency Law, 2 Pa.C.S. §§ 501 through 508 and §§ 701 through 704.

(3) Upon the conclusion of these debarment proceedings, a prompt determination shall be made by the debarring official who shall provide the contractor with a copy of the determination, by certified mail, return receipt requested, and regular mail. If debarment is proposed, this determination should include the reasons for debarment, period of debarment, and the effective date of the debarment.

(Section 7.c.(1)  (3) of M.D. 215.9) (emphasis added).
We agree with the Department that there is nothing in M.D. 215.9 mandating commingling. For example, there is nothing in the above-quoted initiation provision (Section 7.c.(1)) to indicate the identity of the "initiator."
*144 Further, there is nothing in the definition of "Debarring official," "[t]he agency head or designated deputy who imposes debarment,"[8] or the M.D. 215.9 provisions which mandates that the adjudicator necessarily be the same person as the initiator/prosecutor. The Department also notes that Section 7.c.(2) and (3) of M.D. 215.9, quoted above, prescribe the adjudicatory nature of the debarring official's role. He or she is to "afford the contractor an opportunity to present information for consideration" and make a prompt determination at the conclusion of the debarment proceedings.
After carefully reviewing the provisions of M.D. 215.9, we must conclude that nothing therein mandates that the initiator/prosecutor be the same person as the adjudicator. As the Supreme Court stated in Lyness:
[I]n the modern world of sprawling governmental entities akin to corporations it would be both unrealistic and counterproductive to insist that administrative agencies be forbidden from handling both prosecutorial and adjudicatory functions, where such roles are parcelled out and divided among distinct departments or boards.
Lyness, 529 Pa. at 546, 605 A.2d at 1209. Thus, although there is no language in M.D. 215.9 strictly prohibiting commingling, the directive on its face is constitutional.
Both parties cite Stone & Edwards v. Department of Insurance, 161 Pa.Commonwealth Ct. 177, 188-89, 636 A.2d 293, 299, aff'd., 538 Pa. 276, 648 A.2d 304 (1994) in support of their respective positions. In that case, we held as follows:
To determine whether there has been a violation of a person's right to due process, what is examined is not the process that is purportedly authorized, but instead, it is the process that the person is actually going to receive.
Unlike the management directive at issue here, the statute at issue in Stone did facially vest two functions. Despite that patent commingling, this Court concluded that "[b]ecause the process that Petitioners will receive meets all the requirements of due process, their constitutional right to a fair and *145 impartial hearing has not been violated." Id. at 190, 636 A.2d at 300. In other words, there were sufficient "walls of division" present in Stone.
Accordingly, we must examine whether there are sufficient "walls of division" present here to protect the due process rights of PIHS. In that regard, PIHS, the Department of Corrections and the Office of the Budget stipulated as follows:
11. That on or about July 31, 1992, Respondent Department of Corrections solicited advice from the Office of General Counsel concerning compliance with the Pennsylvania Supreme Court['s] decision in [Lyness v. State Board of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992).] It is further agreed and stipulated that prior to December 18, 1992, the Office of General Counsel determined that the adjudicatory function established in Management Directive 215.9 would not be performed by personnel within the Department of Corrections, should an adjudication become necessary.
(Paragraph 11 of Stipulation.)
Significantly, PIHS stipulated that the Office of General Counsel "is responsible for providing direction and advice to Executive Agencies for the administration of the suspension/debarment process" and "assur[ing] that all Pennsylvania Supreme Court mandates, as well as other legal mandates are complied with." (Paragraph 10 of Stipulation.)
In Merchant v. State Board of Medicine, 162 Pa.Commonwealth Ct. 332, 638 A.2d 484 (1994); Batoff v. Bureau of Professional and Occupational Affairs, State Board of Psychology, 158 Pa.Commonwealth Ct. 267, 631 A.2d 781 (1993); and Cooper v. State Board of Medicine, 154 Pa.Commonwealth Ct. 234, 623 A.2d 433 (1993), we declined to presume in advance that an administrative agency would adjudicate a matter in violation of a party's constitutional rights. At this time, we similarly refuse to presume that the Department of Corrections will violate PIHS' due process rights.

3. Scope of M.D. 215.9:
In its petition, PIHS pleaded as follows:

*146 58. The Department of Corrections has not promulgated any rules or regulations relating to suspension or debarment, and has no rules or procedures governing administrative challenges to its procurement-related decisions, such as debarment and suspension.
. . . .
60. Absent violation of the integrity provisions . . ., which has not been alleged by Corrections, there is no basis in contract, regulation, or statue [sic] to debar or suspend PIHS or its affiliated physicians.
(Paragraphs 58 and 60 of Petition) (Emphasis in Original).
PIHS thus argues that the directive erroneously creates a regulatory scheme of general application which has the effect of regulating the conduct of contractors. Further, it argues that the directive should have been promulgated as a regulation under the Commonwealth Documents Law.
The Commonwealth argues that the directive merely advises executive branch employees of the Government's policy decision to deal only with responsible contractors, and advises agencies of the notice and hearing procedures that must be provided to contractors when suspension and debarment are being considered, in order to ensure that contractors' due process rights are given adequate protection. It contends that the directive imposes no duties or responsibilities on any individual or entity outside the executive branch and is aimed directly at agencies under the Governor's jurisdiction, as opposed to independent agencies, the General Assembly or the Judiciary. Section 2 of M.D. 215.9.
Further, the Department argues that the directive need not be promulgated because, under the definition of "administrative regulations" found in 45 P.S. § 1102(2), the directive is not a document that must be promulgated under the Commonwealth Documents Law. The definition of "administrative regulations" is as follows:

*147 (2) `Administrative Regulation' means any regulation except a proclamation, executive order, executive directive or other similar document promulgated by the Governor.
45 P.S. § 1102(2).
Further, the Department argues that M.D. 215.9 is not a "regulation" as defined under the Commonwealth Documents Law:
(12) `Regulation' means any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.
45 P.S. § 1102(12). The Department contends that the directive sets forth procedures which agencies are to follow in imposing suspension and debarment on contractors, while endeavoring to protect the due process rights of contractors. It does not mandate the practice and procedure that is to be followed before an agency. Thus, the Department argues that, because M.D. 215.9 does not fit the definition of "administrative regulation" or "regulation," it does not have to be promulgated under the Commonwealth Documents Law.
We agree with the Department and conclude that M.D. 215.9 is not a disguised regulation, but instead a valid exercise of the Governor's power and responsibility with respect to executive agency professional services contracts.

Conclusion
Accordingly, we deny the Pennsylvania Institutional Health Services, Inc.'s application for summary relief and grant the motion of Commonwealth of Pennsylvania, Department of Corrections for summary judgment. The complaint in equity addressed to this Court's original jurisdiction will be dismissed and the matter is transferred to an appropriate administrative forum for further proceedings pursuant to Management Directive 215.9, Section 7.c(1)  (3), including a hearing conducted under the Administrative Agency Law, if requested by Petitioner, Pennsylvania Institutional Health Services, Inc.

*148 ORDER

AND NOW, this 20th day of October, 1994, the Pennsylvania Institutional Health Services, Inc.'s application for summary relief is hereby denied; the motion of the Commonwealth of Pennsylvania, Department of Corrections for summary judgment is hereby granted. The complaint in equity addressed to this Court's original jurisdiction is hereby dismissed and this matter is transferred to an appropriate administrative forum for further proceedings pursuant to Management Directive 215.9, Section 7.c(1)  (3), including a hearing conducted under the Administrative Agency Law, if requested by Petitioner, Pennsylvania Health Institutional Health Services, Inc.
SMITH, Judge, dissenting.
Although I agree with the Majority's conclusion that Pennsylvania Institutional Health Services, Inc. (PIHS) does have a protectable property interest, I must respectfully dissent from its holding that the language in Management Directive 215.9 is constitutional under Lyness v. State Board of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992).
As recognized by the Supreme Court in Lyness and recently by this Court in Stone & Edwards Ins. Agency, Inc. v. Department of Insurance, 161 Pa.Commonwealth Ct. 177, 636 A.2d 293, aff'd, 538 Pa. 276, 648 A.2d 304 (Nos. 003, 004 M.D. Appeal Docket 1994, filed September 30, 1994), due process rights can be violated not only where there is actual commingling, but even where there exists an appearance of nonobjectivity or that commingling of functions may take place within an agency. Although a single administrative agency may exercise both prosecutorial and adjudicative functions if "walls of division" clearly separating those two functions are constructed within the agency, Lyness, no such walls have been constructed in the present matter. Indeed, Management Directive 215.9 on its face presents actual commingling of functions and, at a minimum, an appearance of commingling of these functions, thereby creating a fatal defect under the Pennsylvania Constitution.
*149 The Majority emphasizes the holding in Stone & Edwards that the focus of the Court's examination is not the process that is purportedly authorized, but is instead the process that the party will actually receive. Paragraph 11 of the stipulation between the parties notwithstanding, the process that PIHS will actually receive regarding its possible suspension and debarment is, at best, unclear. The Management Directive fails to parcel out the roles among distinct departments or boards, sets forth nothing as to the process that PIHS will actually receive, and on its face creates at a minimum an appearance of commingling.
Moreover, the Majority ignores an earlier decision by this Court which overruled Respondents' preliminary objections to PIHS' petition for review in the nature of a complaint in equity and for declaratory judgment challenging implementation of the contractor suspension and debarment procedures. This Court stated as follows:
Inasmuch as the debarring official in the matter sub judice is the same agency representative who issued the notice of suspension and would sit in judgment on the debarment as well under procedures contemplated by the management directive, Petitioners have raised a valid constitutional challenge to the implementation of the management directive. . . .
Pennsylvania Institutional Health Services, Inc. v. Department of Corrections, 158 Pa.Commonwealth Ct. 221, 228, 631 A.2d 767, 771 (1993) (PIHS I).[1]
The Majority apparently disregards PIHS' argument that the procedures for suspension set forth in the Management Directive, as well as the procedures for debarment, are constitutionally infirm under Lyness. Pursuant to Management Directive 215.9, the "suspending official" both notifies the contractor that it has been suspended for an initial period of *150 three months and makes the determination, after reviewing information submitted by the contractor, whether the suspension shall be continued, terminated, or debarment proceedings initiated. As the Directive only permits the contractor to submit information in opposition to the suspension, there is no due process hearing mandated upon suspension. Similarly, under the debarment provisions of the Directive, the agency head or designated deputy who imposes debarment provides notice to a contractor that debarment is being considered and ultimately decides whether debarment shall be imposed. In either case, the designated official is the same individual acting in a dual capacity and deciding whether to bring the action and what the final outcome will be, in clear contravention of Lyness.
The Majority also declines to presume in advance that the Department of Corrections will adjudicate the matter in violation of PIHS' constitutional rights. This ignores PIHS' argument that Management Directive 215.9 is not only constitutionally infirm on its face, it clearly violates Lyness as applied in this case. As previously noted by this Court in PIHS I, Laurence J. Reid, as the suspending official, was delegated the authority to initiate debarment proceedings and to determine debarment of those contractors doing business with the Commonwealth. The present matter stands in contrast to this Court's decision in Stone & Edwards in which an insurance agency was provided with due process in practice, but contended that the statute on its face impermissibly commingled prosecutorial and adjudicatory functions. In that case, the Insurance Department took specific action to comply with Lyness and the Insurance Commissioner delegated all prosecutorial functions to the deputy commissioner for enforcement, who ultimately became responsible for initiation of prosecutions and had no interaction with either the Commissioner's office or the office of administrative hearings, the Department's adjudicative arm.
In the present matter, there is no office of administrative hearings, nor are there any hearing officers or examiners within the Department of Corrections: thus no walls of division *151 exist within the Department. A right to due process entails, inter alia, a right to know how the proceedings shall be conducted. Department of Health v. Brownsville Golden Age Nursing Home, Inc., 103 Pa.Commonwealth Ct. 449, 520 A.2d 926 (1987). Management Directive 215.9, in addition to impermissibly commingling prosecutorial and adjudicatory functions, does not sufficiently set forth the manner in which these proceedings shall be conducted. Further, Section 7(b) of the Directive fails to provide for a hearing conducted pursuant to the Administrative Agency Law, 2 Pa.C.S. §§ 501-508, 701-704, in cases where suspension is imposed. This differs from Stone & Edwards where the Insurance Department provides such a hearing, whether license suspension or revocation is at issue.
Accordingly, I would grant PIHS' application for entry of summary relief on Count II of the petition for review and would deny the Department's motion for summary judgment or summary relief.
NOTES
[1] This case was assigned to the author on June 30, 1994.
[2] On July 17, 1992, M.D. 215.9 was amended at Revision No. 1. (Exhibit 1 to February 1, 1993 Stipulation.)
[3] Pennsylvania Institutional Health Services, Inc. v. Department of Corrections, 158 Pa.Commonwealth Ct. 221, 631 A.2d 767 (1993).
[4] In a February 14, 1994 order, PIHS was directed to file a brief in support of its application for summary relief simultaneously with the Department's brief in support of its motion for summary judgment or summary relief.
[5] Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102-1208.
[6] Under Article I, Section 1 of the Pennsylvania Constitution:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
In R. v. Department of Welfare, 535 Pa. at 455, 636 A.2d at 149 (1994), our Supreme Court held as follows:
[I]n Pennsylvania reputation is an interest that is recognized and protected by our highest state law: our Constitution. Sections 1 and 11 of Article I make explicit reference to `reputation,' providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection. Hatchard v. Westinghouse Broadcasting Co., 516 Pa. 184, 193, 532 A.2d 346, 350 (1987) (citing cases).
[7] 78. This ability to suspend/debar becomes all the more important in light of the fact that a centralized computer file contains the names of all contractors who have been suspended or debarred, and this file may be accessed by other governmental entities in which PIHS has a contract in existence or pending.
[8] (Section 3.g. of M.D. 215.9.)
[1] The Supreme Court recently affirmed this Court's entry of a preliminary mandatory injunction on August 25, 1993 enjoining Respondents from taking any further suspension or debarment action pursuant to the Management Directive pending decision on the underlying declaratory judgment action. Pennsylvania Institutional Health Services, Inc. v. Department of Corrections, 536 Pa. 544, 640 A.2d 413 (1994).