The **BOARD OF COMMISSIONERS OF BEDFORD COUNTY, Commissioner Kirt B. Morris, Commissioner Steven K. Howsare, Commissioner S. Paul Crooks and Bedford County Treasurer Paula K. Sheirer, Petitioners**

v.

**President Judge Thomas S. LING, Court of Common Pleas of Bedford County, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 23, 2014.

Decided May 21, 2014.

Clifford B. Levine, Pittsburgh, for petitioners.

Caroline P. Liebenguth, Philadelphia, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

■ The Board of Commissioners (Commissioners) and Treasurer of Bedford County (collectively, Petitioners) initiated this action in our original jurisdiction, seeking declaratory and equitable relief with respect to three statutorily-based funds.[1] Judicial intervention has become necessary because of a dispute over who within county government has the authority to maintain and control disbursement from those funds. The dispute pits Petitioners against the Honorable Thomas S. Ling, who currently serves as the President Judge for the Court of Common Pleas for the 57th Judicial District, embracing Bedford County (Bedford CCP).

1. Actions for declaratory judgment are governed by the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. The purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541(a). An action brought under the Declaratory Judgments Act " 'must allege an interest by the party seeking relief which is direct, substantial and present, ... and must demonstrate the existence of an actual controversy related to the invasion or threatened invasion of one's legal rights.' " *Bowen v. Mount Joy Twp.*, 165 Pa.Cmwlth. 101, 644 A.2d 818, 821 (1994) (quoting *Pa. Institutional Health Servs., Inc. v. Dep't of Corr.*, 158 Pa.Cmwlth. 221, 631 A.2d 767, 771 (1993)). Granting or denying an action for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction. *Gulnac by Gulnac v. South Butler Cnty. Sch. Dist.*, 526 Pa. 483, 487, 587 A.2d 699, 701 (1991).

Presently before the Court for disposition are the parties' cross-motions for summary judgment, which we will treat as cross-applications for summary relief.[2] For the reasons set forth below, we will grant Petitioner's application for summary relief and deny President Judge Ling's application.

## BACKGROUND

This case presents predominantly questions of law and, as a consequence, the material facts are few and undisputed. The first of the three funds at issue in this action is what the parties refer to as the Fines/Forfeiture Fund. The Fines/Forfeiture Fund exists by virtue of Section 3572 of the Judicial Code, 42 Pa.C.S. § 3572, which provides:

> Except as otherwise provided in this subchapter, all fines, forfeited recognizances and other forfeitures imposed, lost or forfeited and fees and costs collected in the court of common pleas, or community court established for a judicial district embracing a county, or in a magisterial district within a county, or in the Philadelphia Municipal Court, shall be payable to such county.

The Bedford CCP nets approximately $280,000 per year through its collection of fees, fines, and forfeitures. The Bedford CCP, however, does not immediately pay these monies over to the Bedford County treasury. Instead, it initially deposits these funds into an account within its control and, as a consequence, outside of the control of Petitioners. In their complaint,

Petitioners claim that President Judge Ling has improperly withheld funds in that account that, by statute, are due and owing to Bedford County. Petitioners' application for summary relief does not seek relief with respect to the Fines/Forfeiture Fund, but President Judge Ling does in his cross-application.

The second fund at issue is what the parties refer to as the DUI School Fund. This fund has its origins in Section 1549(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1549(b)(1), which requires "[e]ach county, multicounty judicial district or group of counties combined under one program" to "establish and maintain a course of instruction on the problems of alcohol and driving." Regulations that the Pennsylvania Department of Transportation (DOT) promulgated pursuant to this section of the Vehicle Code refer to these programs as Alcohol Highway Safety Schools, or AHSSs.[3] 67 Pa.Code § 94.2. The cost of attending an AHSS is borne by the attendee in the form of a fee established by each county. *Id.* § 94.14. Each AHSS is administered by a DUI program coordinator, appointed by the president judge of the county or multicounty judicial district. *Id.* § 94.12(b), (d).

Bedford County's AHSS has been in existence since 1993. Since its inception, the chief probation/parole officer of Bedford County (CPO), Keith Bowser, has served as the county's DUI program coordinator and, along with the president

2.  *See* Pa. R.A.P. 1501(a)(3) (providing that declaratory judgment actions within this Court's original jurisdiction fall within scope of Chapter 15 of Pennsylvania Rules of Appellate Procedure), 1532(b). "Summary relief under Pa. R.A.P. 1532(b) is similar to the relief envisioned by the rules of civil procedure governing summary judgment." *Brittain v. Beard,* 601 Pa. 409, 417, 974 A.2d 479, 484 (2009). " 'An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.' " *Jubelirer v. Rendell,* 598 Pa. 16, 28, 953 A.2d 514, 521 (2008) (quoting *Calloway v. Pa. Bd. of Prob. & Parole,* 857 A.2d 218, 220 n. 3 (Pa.Cmwlth.2004)).

3.  The parties refer to the program as a "DUI School." We, however, will use the term provided in the Vehicle Code.

judge, has set the fee for attending the AHSS. Also since the inception of the county's AHSS, fees paid have been deposited into a DUI School Account, a/k/a DUI Fund, outside of the purview of the county treasurer. By Order of Court dated June 14, 2012, President Judge Ling directed the following with respect to the DUI Fund:

1. The proceeds of the DUI Fund shall be transferred to a new account, with the Court and Chief Probation Officer as signatories.

2. Effective July 1, 2012, the Probation Office staff who perform DUI related services shall be compensated directly from the DUI Fund. As per the current practice, all compensated service shall take place outside normal office hours.

3. The services of Ritchey, Ritchey, and Koontz shall be retained to provide all necessary accounting service to implement paragraph two, above.

As a result of this order, payroll for the county's AHSS is processed using an Employer Identification Number, or EIN, that is separate from and not associated with Bedford County. President Judge Ling and the CPO have exclusive control over all expenditures from the DUI Fund, as well as all records relating thereto. In its application for summary relief, Petitioners contend that President Judge Ling and the CPO lack legal authority to exercise control over the maintenance and use of monies in the DUI Fund to the exclusion of Petitioners. Both parties seek relief with respect to the dispute over the DUI Fund in their respective applications for summary judgment.

The final of the three funds is what the parties refer to as the county's Supervisory Fund. The Supervisory Fund exists by virtue of Section 1102 of the Crime Victims Act,[4] which requires the treasurer of every county "to establish and administer a county offender supervision fund consisting of fees collected under this section." Section 1102(a) of the Crime Victims Act. The county treasurer may distribute funds from the county offender supervision fund only at the discretion of the president judge of the court of common pleas encompassing the county. *Id.* Monies in the county offender supervision fund may only be used to pay salaries and benefits of employees of the county's probation and parole department and the operational expenses of the department. *Id.* Section 1102(a) continues:

> Money from this fund shall be used to supplement Federal, State or county appropriations for the county adult probation and parole department. The president judge shall by August 31 provide the board with an annual statement which fully reflects all collections deposited into and expenditures from the offender supervision fund for the preceding fiscal year. The [Pennsylvania Board of Probation and Parole] shall promulgate regulations to provide for the permanent administration of this program.

*Id.*

Unless the offender is unable to pay, Section 1102 of the Crime Victims Act further requires the court of common pleas to impose on any offender subject to supervision (*e.g.,* probation, parole, accelerated rehabilitative disposition) a monthly supervision fee of at least $25. The current monthly fee in Bedford County is $50. Half of the fee collected must be deposited in the county's offender supervision fund and the other half must be deposited in the State Offender Supervision Fund under

---

4. Act of November 24, 1998, P.L. 882, *as amended,* 18 P.S. § 11.1102.

the supervision of the Pennsylvania Board of Probation and Parole. *Id.* Pursuant to Section 1102, on an annual basis Bedford County's share of monthly supervision fees (50% of the total collection) is approximately $75,000 to $80,000.

A pattern and practice evolved within Bedford County, at least since 2002, where, at the CPO's direction, acting with authority from the president judge, the Bedford County Director of Finance (Finance Director), Barry Crawford, authorized certain supplemental payroll payments to employees of the county probation office out of Bedford County general funds.[5] Once those payments were made, the Finance Director informed the CPO of the payments in writing. Thereafter, the CPO, with the authority of the president judge, authorized the county treasurer to reimburse the general fund from the Supervisory Fund for those supplemental payments. This arrangement is well detailed and acknowledged in the deposition testimony of the Finance Director, the CPO, and President Judge Ling. In addition, swept up in this arrangement was the creation in 2006, at the request of the CPO and the president judge, of a new position in the county's office of probation and parole titled "Assistant to the Director of the Parole Office." Like the supplemental payroll payments, the county paid for the expenses for this position out of the county's general fund with subsequent reimbursement from the Supervisory Fund.

This practice—*i.e.,* directing Supervisory Fund expenses first from the county's general fund with subsequent reimbursement by transfer from the Supervisory Fund—continued over several years. At some point in or around 2007, president judge-authorized reimbursements from the Supervisory Fund did not keep pace with the CPO-directed expenditures out of the county general fund. Nonetheless, the practice continued, even into 2010, when President Judge Ling became president judge of the Bedford CCP in July of that year, and beyond.

Sometime in or around March 2011, the Commissioners ceased making CPO/president judge directed supplemental payroll payments to probation and parole employees out of the county general fund. Later that year, President Judge Ling directed the CPO to cease all Supervisory Fund reimbursement to the county general fund. Each party blames the other for their respective action. President Judge Ling, out of concern that the office of probation and parole might lose experienced officers, pressed the Commissioners in early 2012 to resume the supplemental payments out of the county's general fund. The Commissioners, however, refused to do so, unless and until arrangements were made to reimburse the county general fund for previously authorized amounts.

Unable to make headway with the Commissioners, President Judge Ling issued an Order of Court dated October 6, 2012, authorizing annual supplemental payments to probation and parole department employees in amounts ranging from $5,000 to $16,000 per employee based on seniority. The order directed the county treasurer to issue the payments on a quarterly basis *directly from* the Supervisory Fund, beginning in the third quarter of 2012. President Judge Ling further directed in the order that all overtime due and payable to the CPO and his assistant be paid directly

---

5. The supplemental payments to employees within the county probation and parole department appear to be discretionary by the president judge and in addition to the established salary for these employees. We need not inquire further into the nature or legal authority for these supplemental payments, which are not at issue in this matter.

out of the Supervisory Fund. He directed that benefits and payroll taxes associated with supplements, overtime, and on-call payments [6] also be paid directly out of the Supervisory Fund. This lawsuit followed shortly thereafter.

In support of their application for summary relief, Petitioners rely in part on an affidavit executed by the Finance Director, in which he states that from 2006 through 2012, the county paid $690,131 in payroll and benefits to probation and parole office personnel under the arrangement described above, but for which it received only $453,289 worth of reimbursements from the Supervisory Fund. This leaves $246,842 in general fund expenditures under the above arrangement for which there has been no Supervisory Fund reimbursement. In his deposition, the CPO testified that he had no reason to dispute the numbers in the Finance Director's affidavit. Moreover, President Judge Ling does not offer any contrary evidence in support of or against these figures. Accordingly, we will accept these figures as undisputed. *Phaff v. Gerner*, 451 Pa. 146, 149–52, 303 A.2d 826, 828–30 (1973); Pa. R.C.P. No. 1035.3.

## DISCUSSION

### A.  Fines/Forfeiture Fund

In his application, President Judge Ling purports to apply for summary relief on Petitioners' claim for declaratory relief with respect to the failure of President Judge Ling to timely remit to the county treasury funds collected pursuant Section 3572 of the Judicial Code. Because, however, President Judge Ling fails to develop any argument in his brief in support as to why we should grant summary relief in his favor and against Petitioners on that claim,

we will deny his application with respect to Petitioners' Fines/Forfeiture Fund claim.

### B.  DUI School Fund

■ Both parties apply for summary relief with respect to the DUI Fund. Petitioners argue that the only authority conferred upon President Judge Ling with respect to the county's AHSS is to appoint the DUI program coordinator, which he has done. 67 Pa.Code § 94.2. President Judge Ling, therefore, is exceeding his authority by setting the fee to attend the county's AHSS and by depositing those fees in a fund, separate and apart from the county's funds held by the treasurer, over which he and the CPO have exclusive authority. President Judge Ling argues that his authority over the county's AHSS fees is derivative of his power to appoint the DUI program coordinator, the court's authority to collect statutory fees under Section 3502(a) of the Judicial Code, and the Pennsylvania Supreme Court's Uniform Disbursement Schedule Order dated June 14, 2005 (Disbursement Schedule Order).

We agree with Petitioners that President Judge Ling does not have the authority to withhold the AHSS fees from the county treasury. The statutory duty "to establish and maintain" an AHSS school lies either in the county, a multicounty judicial district, or a group of counties combined. 75 Pa.C.S. § 1549(b)(1). The duty does not lie with a judicial district that encompasses a single county, like the Bedford CCP. Thus, President Judge Ling, as the president judge of a single-county judicial district, lacks the authority to establish and maintain the Bedford County AHSS. In addition, under 67 Pa. Code § 94.14, President Judge Ling similarly lacks the authority to establish the fee for the school. Instead, that authority

---

**6.**  According to President Judge Ling's deposition testimony, an on-call payment is the

amount paid to an employee to be "on-call" during nonbusiness hours.

lies with Bedford County, acting by and through its Board of Commissioners. The only authority conferred by the statute and regulation on the president judge of a single-county judicial district under this program is the authority to appoint the DUI program coordinator. Neither the Judicial Code nor the Pennsylvania Supreme Court's Uniform Disbursement Schedule Order reasonably can be read to confer upon a president judge power over this statutorily-created program that does not exist in the statute itself.

The Bedford CCP has the authority to continue to collect the AHSS fees from attendees, as provided in Section 3502(a) of the Judicial Code. But because the statute and regulations relating to the creation and maintenance of the county AHSS do not provide otherwise, once collected by the court, the Bedford County Treasurer must receive and receipt all monies (fees) accruing to the county for this program. Section 1760 of The County Code.[7] We, therefore, will grant summary relief in favor of Petitioners and against President Judge Ling with respect to the DUI School Fund.

### C. Supervisory Fund

█ Petitioners acknowledge that the Crime Victims Act confers the authority on President Judge Ling to disburse funds from the Supervisory Fund at his discretion. They contend, however, that this discretionary authority does not permit President Judge Ling to avoid reimbursing the county general fund from the Supervisory Fund for amounts advanced at the direction of him and his predecessor pursuant to that authority. They argue that is exactly what President Judge Ling has done in his October 6, 2012 Order, wherein he effectively continues a practice of

spending tens of thousands of dollars within the Supervisory Fund for payroll "supplements" despite an unpaid reimbursement obligation to the county general fund of over $200,000.

President Judge Ling, in retort and in support of his cross-application, contends that so long as funds are available in the Supervisory Fund, his discretion to spend those funds as he sees fit cannot be questioned. He characterizes Petitioners' claim for reimbursement as a contract claim and cites immunity and the Board of Claims' jurisdiction as defenses. He contends that "supplemental" payroll payments to probation office employees are a lawful use of Supervisory Fund dollars. Moreover, he rejects any contention that such payments must be approved by the county's Salary Board or that such payments run afoul of the collective bargaining agreement between the county and employees of the county probation and parole office. He contends that the county treasurer, therefore, must disburse funds in the Supervisory Account in accord with his October 16, 2012 Order.

Resolution of this dispute requires a straightforward application of the undisputed material facts to the statutory scheme. There is no question that the president judge of the Bedford CCP enjoys broad authority under Section 1102(a) of the Crime Victims Act to direct, at his sole discretion, the county treasurer to distribute monies from the Supervisory Fund to pay salaries and benefits of employees of the county's probation and parole department and the operational expenses of the department. That authority, however, is not at issue in this case. What is at issue is whether that discretion may be exercised in a way that spends the

7. Act of August 9, 1955, P.L. 323, 16 P.S. § 1760 ("The county treasurer shall receive and receipt for all moneys due or accruing to the county.").

same dollars two, three, or four times over, leaving the taxpayers of the county on the hook for expenses that, at the direction of the president judge, should have been paid out of the Supervisory Fund.

Here, it is undisputed that over the course of many years, President Judge Ling's predecessor and, to a lesser extent, President Judge Ling himself, through the CPO, directed the use of Supervisory Fund dollars to pay for probation and parole department salaries and benefits, including, but not limited to, "supplemental" payments to employees based on years of service and compensation and benefits for the newly-created position of assistant to the CPO. The mechanics of how the president judge, CPO, Finance Director, and county treasurer acted in concert to effect that exercise of discretion is much less important than the exercise of the discretion itself. Because the president judge of Bedford CCP exercised that discretion, the county treasurer is statutorily-authorized to disburse Supervisory Fund dollars to cover those expenses. We see nothing in Section 1102 of the Crime Victims Act that authorizes a president judge, once the directive is given to use Supervisory Fund monies in a certain manner and once the county incurs the expense pursuant to that directive from the president judge, to hinder the county treasurer from disbursing monies from the Supervisory Fund in furtherance of that directive.

The undisputed material facts in this case reveal that by lawful authorization from the president judge of Bedford CCP, the county has incurred $246,842 in Supervisory Fund expenses that have not yet been paid out of the Supervisory Fund. Because those expenses were incurred with the prior authorization and directive from the president judge of Bedford CCP, through the CPO, the county treasurer would be acting well within her lawful authority under Section 1102(a) to distribute existing monies within the Supervisory Fund to reimburse the county for that incurred expense. No second or further authorization from the president judge is necessary, and no act of President Judge Ling can revoke that authorization because the county has already incurred the authorized expense. We, therefore, will grant summary relief in favor of Petitioners and against President Judge Ling with respect to the Supervisory Fund.[8]

### D. Relief

The final matter we must address is the relief that we can grant Petitioners in this matter. President Judge Ling acknowledges this Court's jurisdiction to enter declaratory relief pursuant to Section 761(a)(1) of the Judicial Code, 42 Pa.C.S. § 761(a)(1) (relating to actions against Commonwealth government). He contends, however, that only the Pennsylvania Supreme Court, may, to the extent they seek it, grant Petitioners relief in the nature of mandamus, compelling President Judge Ling to take certain action.

Because we do not find it necessary to issue any order compelling President Judge Ling to act or to refrain from acting in a particular manner, we need not address President Judge Ling's concern over our jurisdiction. Instead, declaratory re-

---

**8.** It is unnecessary for us to address President Judge Ling's arguments relating to the county Salary Board, immunity, the authority to pay "supplemental" salaries to probation and parole employees out of the Supervisory Fund, collective bargaining, and the Board of Claims jurisdiction. Simply stated, we do not see any of these arguments as addressing the issue that Petitioners have raised with respect to the Supervisory Fund. The issue before the Court, stated simply, is who has the authority to do what under Section 1102(a) of the Crime Victims Act.

lief is sufficient to advise the parties with respect to their rights, duties, and obligations under the laws of this Commonwealth. To the extent the declaratory relief that we grant here informs President Judge Ling as to such matters, we have every expectation that he will choose to act in accord with the law as interpreted by this Court.[9]

Judge McCULLOUGH did not participate in the decision of this case.

### ORDER

AND NOW, this 21st day of May, 2014, upon consideration of the parties' cross-motions for summary judgment, which the Court treats as cross-applications for summary relief, it is hereby ORDERED that the application of Respondent President Judge Thomas S. Ling, Court of Common Pleas of Bedford County, is DENIED, the application of Petitioners the Board of Commissioners of Bedford County and the Bedford County Treasurer is GRANTED, and the following declaratory judgment is entered on the undisputed material facts:

**DUI School Fund**

1. All fees collected by the Court of Common Pleas for the 57th Judicial District (Bedford County CCP) under Section 1549(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1549(b)(1), and the implementing regulations, must be deposited in the county treasury pursuant to Section 1760 of The County Code (16 P.S. § 1760) and cannot be held and/or controlled by the president judge of Bedford County CCP or those acting under his authority.

2. The president judge of the Bedford County CCP may appoint the DUI program coordinator pursuant to 67 Pa. Code § 94.2. That, however, is the extent of his authority with respect to the county's alcohol highway safety school (AHSS).

3. Bedford County, by and through its duly elected Board of Commissioners, has the statutory duty to maintain the county's AHSS, including the authority to establish the fee for attendance. 75 Pa.C.S. § 1549(b)(1); 67 Pa.Code § 94.14.

**Supervisory Fund**

4. Because the president judge of Bedford CCP exercised his statutory discretion and authorized and directed Bedford County to spend $246,842 toward expenses that the president judge designated as expenses of the offender supervision fund (Supervisory Fund) under his supervision pursuant to Section 1102(a) of the Crime Victims Act, 18 P.S. § 11.1102(a), the Bedford County Treasurer may transfer funds held in the Supervisory Fund to reimburse Bedford County for those expenses without the need for additional authorization from the president judge until the expense is fully reimbursed.

5. Once a directive is given to use Supervisory Fund monies in a certain manner and once Bedford County incurs the expense pursuant to that directive from the president judge of the Bedford CCP, the president judge lacks the legal authority to issue any directive or order to the Bedford County Treasurer that

---

9. Of course, if President Judge Ling disagrees with our disposition of this matter, he may appeal our decision to the Pennsylvania Supreme Court. Because, however, our order does not dispose of every claim in Petitioners' complaint, as it does not address the Fines/Forfeiture Fund claim, it may not yet be final and appealable. See Pa. R.A.P. 341; but see Nationwide Mutual Ins. Co. v. Wickett, 563 Pa. 595, 763 A.2d 813 (2000) (holding that, under certain circumstances, appeal of order granting partial relief in declaratory judgment action may be immediately appealable).

would hinder her from disbursing monies from the Supervisory Fund in furtherance of that prior lawful directive.