**BIRCH HILLS RESIDENCE and Mallard Meadows Residential Healthcare Center, Inc., Petitioners**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 2007.

Decided Jan. 17, 2008.

---

Michael A. Hynum and Charles Artz, New Cumberland, for petitioners.

Daniel Fellin, Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER and SIMPSON, Judges, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Commonwealth of Pennsylvania, Department of Public Welfare (Department) has filed preliminary objections to the petition for review filed in the Court's original jurisdiction by the personal care homes operated as Birch Hills Residence (Birch Hills) and Mallard Meadows Residential Healthcare Center, Inc. (Mallard Meadows) (together, Petitioners). They seek a declaration that 55 Pa.Code § 2600.269, relating to ban on admissions, is invalid and unenforceable.

On August 7, 2007, the Department sent notices to Gregory Salko, M.D., President/Chief Executive Officer of Phoenix Healthcare Group (Phoenix) and co-owner of Petitioners, and Donald Yurkanin, President of Petitioners, stating that the Department was refusing to renew Petitioners' licenses pursuant to Section 1026(b)(4) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 1026(b)(4), which allows the Department to refuse a license or to revoke a license for "[g]ross incompetence, negligence or misconduct in operating the facility...." The action was due to felony charges initiated against Dr. Salko in July 2007 under Section 2713 of the Crimes Code, *as amended,* 18 Pa. C.S. § 2713,[1] with at least one charge relating to the neglect of a care-dependent person residing in a facility operated by Phoenix. In accordance with 55 Pa.Code § 2600.269, no admissions were permitted after the date of the Department's letter.

Petitioners appealed to the Bureau of Hearings and Appeals, and they filed their petition for review seeking a declaration that 55 Pa.Code § 2600.269 is invalid and unenforceable. That section provides in part: "(a) The Department will ban new admissions to a home: ... (3) Whose license has been revoked or nonrenewed." They also moved to enjoin the Department from maintaining the ban pending an evidentiary hearing on its refusal to renew the licenses or a hearing on the petition for review. On September 17, 2007, Senior Judge Barry F. Feudale held a hearing and thereafter granted preliminary injunctive relief, limited to a temporary suspension or stay of the ban on admissions, subject to continued inspection by the Department and its power to re-impose the admissions ban if future inspections reveal violations that threaten the life or health of the residents.

Among the exhibits offered at the preliminary injunction hearing was Common-

---

1. 18 Pa.C.S. § 2713 provides in pertinent part:

   **(a) Offense defined.**—A caretaker is guilty of neglect of a care-dependent person if he:

   (1) Intentionally, knowingly or recklessly causes bodily injury or serious bodily injury by failing to provide treatment, care, goods or services necessary to preserve the health, safety or welfare of a care-dependent person for whom he is responsible to provide care.

wealth Ex. F, which was the presentment and recommendation of the Lackawanna County investigating grand jury of June 28, 2007 (Presentment) that led to the filing of criminal charges against Dr. Salko and others. According to the Presentment, Dr. Salko is a "high managerial agent" and the alter ego of Birch Hills and of Phoenix, which operates both of these personal care homes. Peggy Rogers was admitted as a resident to Birch Hills on June 17, 2004, and she agreed to have Dr. Salko, a member of the Birch Hills board of directors, as her primary medical doctor. She was diagnosed at the time with dementia, Alzheimer's type and hypothyroidism. Beginning July 25, 2004, Dr. Salko saw Ms. Rogers at least once each month. He purported to conduct in-depth physical examinations of Ms. Rogers three times per month in the late spring and summer of 2006.

When Ms. Rogers was admitted to a hospital on August 20, 2006 for weakness, inability to walk and altered mental state, she had an open, oozing sore on her breast, and she presented with extremely poor hygiene, including yellowish scaling skin on her scalp, legs and feet, matted hair, filthy fingernails and toenails and her bra stained by and stuck to the open sore. A nurse at the hospital called Birch Hills and was told that Ms. Rogers had been bathed that morning. Records showed that in fact she had had only six baths since the beginning of 2006. The director of admissions at Birch Hills admitted creating a false shower log after the grand jury investigation started. A nurse at the hospital talked to Dr. Salko on August 20, 2006 before the admission, and he said nothing about the open sore.

Physicians ultimately diagnosed Ms. Rogers with breast cancer that had metastasized to her lungs, liver and bones. She was transferred to a community medical center and then to another residence where she was treated with palliative care and died on November 5, 2006. Dr. Salko's reports indicate that he conducted physical examinations of Ms. Rogers on May 27, June 11, June 17, June 25, July 2, July 9, July 23 and August 13, 2006, including an exam of her breasts that showed no discharges, lumps, masses, skin changes, swelling or tenderness. Staff members at Birch Hills testified that they never saw Dr. Salko perform a breast exam on the resident and that he did not perform extensive physical examinations. The Presentment recommended that Dr. Salko, Birch Hills, and Phoenix be criminally charged with neglect of a care dependent person, along with two Birch Hills employees, under 18 Pa.C.S. § 2713. The grand jury also recommended that the two employees be charged with tampering with evidence.

■ Petitioners assert in Count I of their petition for review that a material conflict exists between 55 Pa.Code § 2600.269 and certain provisions of the Public Welfare Code, specifically Sections 211, 213, 1001, 1057.1–3 and 1085–1087, added in part by Section 1 of the Act of July 10, 1980, P.L. 493 and by Sections 2, 6 and 7 of the Act of December 21, 1988, P.L. 1883 (Act 185), 62 P.S. §§ 211, 213, 1001, 1057.1–3 and 1085–1087. They note that Section 1021 of the Public Welfare Code, 62 P.S. § 1021, authorizes the Department to adopt regulations establishing minimum standards for building, equipment, operation, care, program and services and for the issuance of licenses and that Section 1086, added by Section 7 of Act 185, 62 P.S. § 1086, contains a provision for penalties to be applied to personal care homes for violation of regulations. They contend, however, that the Department is not authorized by statute to prohibit a personal care home from admitting

residents as a penalty for non-compliance or in response to other allegations relating to owners.

In Count II, Petitioners assert that 55 Pa.Code § 2600.269 imposes substantial pre-hearing penalties upon them in that the regulation prohibits and/or makes it impractical for the personal care homes to operate effectively and so severely limits their ability to pursue their appeals. Also, the regulation deprives them of a property interest—to fully operate the facilities and accept new residents—without a hearing, based on allegations that may never be proved, and no exigent circumstances exist to justify a ban on admissions without first holding a hearing or without an immediate post-deprivation hearing, in violation of the due process clauses under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1 and 9 of the Pennsylvania Constitution.

Count III repeats the claim that the Department's conduct violates the personal care homes' right to due process under the Fifth and Fourteenth Amendments. Count IV asserts that 42 U.S.C. § 1983 provides a cause of action for any deprivation of rights, privileges or immunities secured by the United States Constitution and laws and that the "disparate treatment" of Petitioners by "selective enforcement" against them by the Department of an admission ban has no rational basis in law or fact and violates their civil rights.

The Department filed preliminary objections styled a demurrer and a brief in support. As to Count I, the Department maintains that nothing in 55 Pa.Code § 2600.269 conflicts with its authorizing statute, namely, Article X of the Public Welfare Code, 62 P.S. §§ 1001–1087. As this Court recently recognized in the specific context of a challenge to the personal care home regulations at 55 Pa.Code Chapter 2600, each regulatory provision

need not be specifically authorized by statute. *Northern Area Personal Care Home Adm'rs Ass'n v. Department of Public Welfare*, 899 A.2d 1182 (Pa.Cmwlth.2006), *aff'd*, 591 Pa. 405, 919 A.2d 187 (2007). The delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public. *Commonwealth, Department of Transportation v. Beam*, 567 Pa. 492, 788 A.2d 357 (2002). In addition, Section 1057.1(a), 62 P.S. § 1057.1(a), specifically provides that an appeal from a decision of the department relating to the licensure or revocation of a personal care home shall not act as a supersedeas, but upon cause shown the reviewing authority shall have the power to grant a supersedeas. This gives the Department authority to prohibit operation at all pending appeal; therefore, it may impose conditions upon continued operation.

The Department asserts that no fact averred under Counts II and III, even if true, warrants relief on due process grounds. A property interest must be created by statute or regulation or arise from a government policy or an explicit understanding between a government employer and employee. *Piecknick v. Pennsylvania*, 36 F.3d 1250 (3d Cir.1994). Nothing in state law provides a property interest for Petitioners to admit new residents after an action to refuse to renew their licenses has been taken. Further, even if they established a property right, states are not required to provide a pre-deprivation hearing in all instances. In *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), it was held that no hearing was required before suspension without pay of a campus police officer who had been charged with a felony drug offense. Here the filing of felony charges against Dr. Salko, Birch Hills and Phoenix

assures that an independent third party has found probable cause to believe that a serious crime has been committed.

■ Regarding the reference in Count III to an unspecified equal protection claim and that in Count IV to disparate treatment, the Department again maintains that no fact averred by Petitioners, even if true, warrants relief on equal protection grounds. An agency's exercise of enforcement discretion is not subject to judicial review. *Commonwealth v. Sanico, Inc.*, 830 A.2d 621 (Pa.Cmwlth.2003). To make out a claim of disparate treatment, Petitioners would have to allege that similarly situated persons were treated differently and that the decisions were made on some unjustifiable basis such as race, religion or other arbitrary standard. Petitioners have not alleged facts on either point. The Department notes that Petitioners cite no case in which a facility has been permitted to admit new residents after its license has been non-renewed, and their equal protection claims appear to be based on the underlying decision not to renew the licenses. Those decisions are currently on appeal to the Bureau of Hearings and Appeals, and because Petitioners have not exhausted the administrative remedies the Court lacks jurisdiction. *See Pennsylvania Pharmacists Ass'n v. Commonwealth, Department of Public Welfare*, 733 A.2d 666 (Pa.Cmwlth.1999) (sustaining preliminary objection to the Court's jurisdiction to consider claim for declaratory, equitable and mandamus relief by petitioner pharmacists challenging outpatient pharmacy rates implemented under a managed care program, where they had effectively sought the administrative remedy of requesting Department review and recalculation of rates).

Last, the Department argues that the Count IV assertion of a cause of action under 42 U.S.C. § 1983 must fail because in order to maintain a claim under Section 1983 petitioners must show a violation of a right secured by the United States Constitution or by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). For the reasons advanced earlier, the Department states that Petitioners have no valid equal protection or due process claims under the United States Constitution; therefore, their Section 1983 action should be dismissed.

Petitioners note the general principles that in ruling on preliminary objections the Court must accept as true all well pleaded allegations of material fact as well as inferences deducible therefrom; for objections to be sustained it must appear with certainty that the law will permit no recovery, and any doubt should be resolved in favor of the non-moving party. *Smith v. Pennsylvania Employees Benefit Trust Fund*, 894 A.2d 874 (Pa.Cmwlth.2006). Petitioners largely restate the arguments in their petition for review. They aver that they have been forced to deny admissions to at least four prospective residents at a cost of over $11,000, and these effects have been imposed without a hearing in violation of due process. As for their equal protection claims, Petitioners point out that the deficiency report attached to the Birch Hills non-renewal letter refers to twenty-four deficiencies based on four inspections in August 2006 and May 2007. The average for renewal inspections since adoption of the new regulations is thirty-one, according to statistics, and no deficiencies were noted in Mallard Meadows' letter.

The Court takes particular note of the Department's citation to 62 P.S. § 1057.1 and *Pennsylvania Pharmacists Ass'n* regarding the principle of exhaustion of administrative remedies. In that case the Court stated that the courts have long held that a party challenging administrative decision-making must first exhaust adminis-

trative remedies before seeking judicial review; courts lack jurisdiction where such remedies exist. *Id.* (citing *Canonsburg General Hosp. v. Department of Health,* 492 Pa. 68, 422 A.2d 141 (1980), and *Colonial School District v. Commonwealth, Department of Education,* 145 Pa.Cmwlth. 74, 602 A.2d 455 (1992)). The doctrine is not inflexible, and it is not applied where administrative remedies are not available or are inadequate, and a remedy is not adequate if it does not allow for adjudication of the issue raised or if it permits irreparable harm to occur to the plaintiff during the pursuit of the statutory remedy. *Pennsylvania Pharmacists Ass'n.* Moreover, exhaustion has not been required in some cases involving a direct constitutional attack upon a statute or where pursuit of an existing remedy would be futile. *Id.* (citing *Ohio Casualty Group of Ins. Cos. v. Argonaut Ins. Co.,* 514 Pa. 430, 525 A.2d 1195 (1987), and *Pennsylvania Institutional Health Servs., Inc. v. Commonwealth, Department of Corrections,* 158 Pa.Cmwlth. 221, 631 A.2d 767 (1993), *aff'd,* 536 Pa. 544, 640 A.2d 413 (1994)).

As the Department notes, and as Petitioners concede, Section 1021 of the Public Welfare Code grants the Department broad general authority in regard to regulation of personal care homes. In addition, Section 1026(b) of the Public Welfare Code provides in part: "The department shall refuse to issue a license or shall revoke a license for any of the following reasons: ... (4) Gross incompetence, negligence or misconduct in operating the facility...." Section 1057.1(a) specifically addresses the situation of an action against a license by the Department: "An appeal from the decision of the department relating to the licensure or revocation of a personal care home shall not act as a supersedeas but, upon cause shown and where circumstances require it, the reviewing authority shall have the power to grant a supersedeas." The Court finds that this provision creates an administrative remedy for the issue raised by Petitioners here.

Section 1057.1(a) of the Public Welfare Code does not create the right to appeal; rather, it establishes the effect of an appeal from an action on a license (including non-renewal, which clearly is a "decision ... relating to the licensure ... of a personal care home"). The operation of a personal care home is an activity that by its nature involves concerns for the safety and welfare of the residents. The definition of "personal care home" in Section 1001, 62 P.S. § 1001, demonstrates this.[2] Unfortunately, the condition of Ms. Rogers on her presentation to the hospital provides a graphic demonstration of this point.

In recognition of the concern for the safety and welfare of residents, Section 1057.1(a) provides in general that an appeal from an action against a license shall not operate as a supersedeas. The provision also recognizes, however, that in particular circumstances an operator might be able to show entitlement to a supersedeas, and it empowers the reviewing authority, upon cause shown, to grant it. This statutory procedure encompasses and allows for consideration of Petitioners' claim that 55

---

**2.** The definition in Section 1001 is as follows:
   "**Personal care home**" means any premises in which food, shelter and personal assistance or supervision are provided for a period exceeding twenty-four hours for four or more adults who are not relatives of the operator, who do not require the services in or of a licensed long-term care facility but who do require assistance or supervision in such matters as dressing, bathing, diet, financial management, evacuation of a residence in the event of an emergency or medication prescribed for self administration.

Pa.Code § 2600.269 is invalid and unenforceable and their claim that they should be permitted to admit new residents pending their appeals. In view of the availability of an adequate administrative remedy, this Court lacks jurisdiction to rule upon Petitioners' petition for review. *Pennsylvania Pharmacists Ass'n.* Therefore, the Court will dismiss the petition. In view of this conclusion, the Court must vacate the order of Senior Judge Feudale because at this time the Court lacks jurisdiction over the dispute. The Court, however, urges the Department to rule expeditiously should Petitioners choose to pursue this issue.

## *ORDER*

AND NOW, this 17th day of January, 2008, the petition for review filed by Birch Hills Residence and Mallard Meadows Residential Healthcare Center, Inc. is dismissed for want of jurisdiction where an adequate administrative remedy is available before the Department of Public Welfare, Bureau of Hearings and Appeals. The order entered by Senior Judge Barry F. Feudale in this matter on September 17, 2007 is vacated.