Harry C. ULSH

v.

**ZONING HEARING BOARD OF LOWER PAXTON TOWNSHIP and Triple Crown Corporation.**

**Appeal of: Triple Crown Corporation.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2011.
Decided April 26, 2011.

Paige MacDonald–Matthes, Harrisburg, for appellant.

Helen L. Gemmill, Harrisburg, for appellee.

BEFORE: LEADBETTER, President, Judge, and BUTLER, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Judge BUTLER.

Triple Crown Corporation (TCC) appeals from the June 25, 2010 order of the Court of Common Pleas of Dauphin County (trial court) denying its petition for judgment of *non pros* and reversing the deemed approval of a variance by the Zoning Hearing Board (ZHB) of Lower Paxton Township (Township) in light of this Court's holding in *Snyder v. Zoning Hearing Board of Lower Paxton Township*, 964 A.2d 507 (Pa.Cmwlth. No. 983 C.D. 2008, filed January 28, 2009). The issues for this Court's review are: (1) whether the trial court erred as a matter of law by failing to grant TCC's petition for judgment of *non pros*; (2) whether the trial court denied TCC's due process rights by rendering a decision on the merits of Harry C. Ulsh's (Ulsh) land use appeal during the hearing to address the request for *non pros*; (3) whether the trial court erred as a matter of law by failing to schedule and/or conduct a separate *de novo* hearing on Ulsh's appeal before reversing the deemed approval of the variance; (4) whether the trial court erred by failing to make substantive findings of fact to support its deci-

sion to reverse the deemed approval of the variance; (5) whether the trial court erred by concluding that Ulsh's land use appeal is directly controlled by *Snyder;* and, (6) whether the trial court erred by interpreting *Snyder* to support its conclusion that TCC is not entitled to *any* approval. For the reasons that follow, the portion of the trial court's order denying TCC's petition for judgment of *non pros* is affirmed. The portion of the trial court's order rendering a decision as to the merits of deemed approval is vacated, and this matter is remanded to the trial court for proceedings consistent with this Opinion.

This matter presents a significant procedural history. TCC was seeking to develop 492 residential units (consisting of single-family homes, townhouses and condominiums) on a 246–acre parcel of currently-undeveloped land. Pursuant to the Township's ordinance, as a result of the topography of the land in question, only 374 residential units may be developed on the subject property.[1] Therefore, in order to construct the additional units on the property, TCC sought a variance from the Township.

On March 31, 2006, TCC applied for a variance to construct the 492 units (First Variance Application). A hearing was held on April 27, 2006. Township resident, Harry C. Ulsh, attended the hearing and opposed TCC's variance application. At the hearing, the ZHB voted to deny the application. The ZHB failed, however, to mail a written decision denying the variance within 45 days.

On or about June 26, 2006, following rezoning of the area to residential cluster (R–C) by the Board of Supervisors on July 18, 2006, with the approval of the Town-

ship's Planning commission, and after significant negotiation between TCC and Stray Winds Area Neighbors (SWAN), TCC again applied to the ZHB for a variance, but for only 449 units (Second Variance Application). This application differed from the first, primarily in that TCC offered to fund significant offsite improvements for the Township at a cost of $1.8 million. A hearing was held on July 27, 2006. Resident, Andrew Snyder, attended the hearing and opposed TCC's application. TCC argued that the additional 75 residential units are necessary in order to offset the $1.8 million in improvements it has promised the Township. On September 7, 2006, the ZHB approved TCC's request for a variance, subject to certain conditions, including that TCC contribute $1.8 million to the Township for offsite public road improvements.

On October 6, 2006, Snyder appealed the ZHB's approval of the Second Variance Application to the trial court, and TCC intervened (Snyder appeal). On November 17, 2006, during the briefing stage of the Snyder appeal, TCC filed a mandamus action against the ZHB and the Township based upon the ZHB's failure to timely issue a written decision denying the First Variance Application, seeking to compel the ZHB to advertise what was by then a deemed approval. The mandamus action was resolved by a settlement agreement entered into between TCC, the ZHB and the Township on September 27, 2007, which required the ZHB give public notice of the deemed approval of the First Variance Application, and limited TCC to developing 449 units, "pursuant to all conditions agreed to by [TCC] and imposed by [the ZHB] in the hearing of July 27, 2006"

---

1. The Township's yield plan analysis actually allowed development of 377 residential units; however, negotiations with Stray Winds Area Neighbors (SWAN), a citizens group of sever-
al hundred area residents concerned about the impact of the project resulted in a shift of the plan, and three of the proposed units were eliminated.

(for the Second Variance Application). Reproduced Record (R.R.) at 25a.

On October 4, 2007, Snyder filed an application for a status conference in his appeal because nothing had occurred since the briefing was completed on January 19, 2007. He also brought the mandamus action in the First Variance Application to the trial court's attention.

In accordance with the settlement agreement, the ZHB gave public notice of the deemed approval of the First Variance Application in *The Paxton Herald* on November 7 and 14, 2007. On November 28, 2007, Ulsh filed a timely appeal of the deemed approval of the First Variance Application, and TCC intervened (Ulsh Appeal).[2] Ulsh claimed that TCC waived any right to deemed approval of the First Variance Application since it filed and proceeded with the Second Variance Application and, even if it were entitled to a deemed approval, it must be overturned since TCC is unable to meet the elements for grant of the First Variance Application.

In his brief, Ulsh states that, during a December 4, 2007 status conference for the Snyder appeal, counsel representing Snyder (and Ulsh) notified the trial court's law clerk of the Ulsh appeal, and represented that a decision in the Snyder appeal would control the Ulsh appeal. TCC denies the latter occurred. In any event, the trial court did not issue a briefing schedule in the Ulsh appeal.

On May 7, 2008, the trial court issued a decision upholding the ZHB's grant of TCC's Second Variance Application. Sny-

der appealed to this Court. On January 28, 2009, this Court reversed the grant of the Second Variance Application on the basis that a purely economic hardship arising from TCC's voluntary commitment to upgrade the Township's existing road network was not sufficient to support a finding of unnecessary hardship required for grant of a variance.[3]

 On March 27, 2009, TCC filed a petition for judgment of *non pros* in the First Variance Application, since no action had taken place relative to that matter since TCC intervened on December 4, 2007 (approximately 15 months earlier). On September 15, 2009, the trial court assigned TCC's petition to Judge Scott Arthur Evans, as he was also involved in Snyder's appeal. On October 9, 2009, Ulsh filed an application for a status conference due to the final nature of this Court's decision in Snyder's appeal. Oral argument on the petition for judgment of *non pros* was held on November 23, 2009. Thereafter, on January 27, 2010, the trial court held an evidentiary hearing at which TCC presented the testimony of the Township's planning and zoning officer, Dianne Moran, and TCC representative, Mark DiSanto. David E. Lehman, counsel for Ulsh and Snyder, testified on behalf of Ulsh. On June 25, 2010, the trial court issued its order denying TCC's petition for judgment of *non pros*, and reversing the deemed approval in light of this Court's decision in the Snyder appeal. TCC then appealed to this Court.[4]

---

2. Ulsh (Township resident) and TCC were each represented in the Ulsh appeal by the same attorneys that simultaneously represented Snyder (Township resident) and TCC, respectively, in the Snyder appeal.

3. TCC filed a petition for allowance of appeal to the Pennsylvania Supreme Court which, on September 15, 2009, was denied. *Snyder v.*

*Lower Paxton Township and Triple Crown Corporation,* 602 Pa. 672, 980 A.2d 611 (No. 120 MAL 2009, filed September 15, 2009).

4. "The question of granting a non pros due to the failure of the plaintiff to prosecute his action within a reasonable time rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Ja-*

■ TCC argues that *Snyder* is not binding precedent upon which the trial court could properly rely. We disagree. Because the other issues on appeal appear to be based upon whether *Snyder* is in fact controlling here, that issue will be addressed first.

The *Snyder* opinion is an unreported panel decision of this Court. The version of Section 414 of this Court's Internal Operating Procedures (IOP) in effect when the trial court's June 25, 2010 order was issued stated that unreported opinions of this Court shall not be cited to or relied upon by the Court, "except when it is relevant under the doctrine of law of the case, res judicata or collateral estoppel." This Court recently examined the issue of whether a property owner's entitlement to a variance was precluded by the doctrine of res judicata, stating, "Pennsylvania courts generally apply *res judicata* narrowly in zoning matters, because the need for flexibility outweighs the risk of repetitive litigation." *Callowhill Ctr. Assocs., LLC v. Zoning Bd. of Adjustment,* 2 A.3d 802, 809 (Pa.Cmwlth.2010). In *Callowhill,* this Court also stated:

> [T]he doctrine of *res judicata* subsumes the doctrine of collateral estoppel, which forecloses re-litigation in a later action of an issue of fact or law that was actually litigated and was necessary to the original judgment. Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy

to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Callowhill,* 2 A.3d at 809 (citation omitted). Applying those factors to the facts of this case, we conclude that the doctrine of collateral estoppel applies here.

The issue decided in *Snyder* is identical to the issue now on appeal by Ulsh. The First Variance Application, appealed by Ulsh, initially sought a variance for 118 units. However, TCC amended its application at the April 27, 2006 hearing to seek a variance for only 75 units, with TCC applying to develop 449 units. Moreover, the September 27, 2007 settlement agreement limited TCC to developing 449 units, "pursuant to all conditions agreed to by [TCC] and imposed by [the ZHB] in the hearing of July 27, 2006" for the Second Variance Application, i.e., the 449 unit application appealed by Snyder. R.R. at 25a. Accordingly, although the variance applications were separate applications with separate Township docket numbers and separate hearings, due to the provisions in the September 27, 2007 settlement agreement, the substance of the first and second variance applications (variance to develop an additional 75 units) became identical.

Further, the parties involved in *Snyder* are the very same parties now involved in Ulsh's appeal, with the only exception being that one Township resident opposing the development at issue has been substituted for another. The parties against whom collateral estoppel is asserted, TCC,

---

cobs v. Halloran, 551 Pa. 350, 354, 710 A.2d 1098, 1101 (1998). "If in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable ... as shown by the evidence or the record, discretion is abused." *City of Phila.*

v. Fraternal Order of Police Lodge No. 5 (Breary), 604 Pa. 267, 299, 985 A.2d 1259, 1278–79 (2009) (quoting *Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n,* 592 Pa. 475, 487, 926 A.2d 908, 916 (2007)).

the ZHB and the Township, were each involved in the consideration of both variance applications. Moreover, in each case, the Township residents are represented by the same counsel, each acting in their respective capacity as residents of the Township, and each pursuing the same immediate objective, i.e., forcing TCC's proposed development to comply with the Township's zoning ordinance without variance.

The judgment on the merits in *Snyder*, reversing the trial court's grant of variance because TCC did not prove unnecessary hardship, is instructive with respect to a determination of the Ulsh appeal because, in substance, they involve identical applications. In *Snyder*, this Court specifically examined whether TCC proved that the subject ordinance inflicted an unnecessary hardship with respect to the proposed development. TCC's sole claim was that it and the Township would face economic hardship if the variance was not granted, since the development project at only 374 units will not sufficiently fund TCC's promised $1.8 million offsite improvements. Because TCC's claimed hardship was purely economic and arose from its voluntary commitment to upgrade the Township's existing road network, this Court deemed it insufficient to support a finding of unnecessary hardship and declared that the variance should not have been granted. Because Ulsh's objection to the variance deemed approved was the same as that examined in the *Snyder* case, the decision in *Snyder* is instructive in rendering a decision regarding Ulsh's appeal.

Because all of the relevant factors have been met, the doctrine of collateral estoppel applies, and this Court's decision in *Snyder* was permissibly relied upon by the trial court. Accordingly, the trial court did not err by concluding that Ulsh's land use appeal is controlled by *Snyder*. We hold that Ulsh's land use appeal is controlled by *Snyder* to the extent that the parties seek to relitigate issues that are already resolved. TCC is collaterally estopped from relitigating the issue of whether TCC proved that the subject ordinance inflicted an unnecessary hardship with respect to the proposed development.

■■■■ Having determined that *Snyder* controls, we can now address the issue of whether the trial court erred by failing to grant TCC's petition for judgment of *non pros*.

A Court may properly enter a judgment of non pros[ ] when a party to the proceeding has shown a want of due diligence in failing to proceed with reasonable promptitude, and there has been no compelling reason for the delay, and the delay has caused some prejudice to the adverse party, such as the death of or unexplained absence of material witnesses.

*James Bros. Lumber Co. v. Union Banking & Trust Co. of Du Bois*, 432 Pa. 129, 132, 247 A.2d 587, 589 (1968).[5] In this case, Ulsh proceeded with reasonable promptitude and had a compelling reason for not urging the trial court to move his appeal forward. It is undisputed that the sole reason Ulsh failed to proceed with his appeal once it was filed is that his attorneys, who were simultaneously litigating Snyder, felt that Snyder controlled the outcome of Ulsh's appeal. Rather than delaying *Snyder* by seeking a consolidation of the two cases, a reasonable decision was made to pursue a decision in *Snyder* before attempting to move Ulsh's appeal forward.

---

**5.** In *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), the Pennsylvania Supreme Court re-affirmed the test previously established in *James Brothers*.

■■ Moreover, TCC failed to establish that it was prejudiced by Ulsh's decision. Although TCC presented testimony to the trial court that it had expended significant sums of money, and it suffered intangible losses due to the downturn in the real estate market that makes its proposed project less valuable, it has failed to show the prejudice necessary for this Court to overturn the trial court's refusal to grant *non pros*. In *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), the Pennsylvania Supreme Court recognized that "prejudice could be established by the death or absence of a material witness." *Id.* at 359, 710 A.2d at 1103. It "further defined prejudice as 'any substantial diminution of a party's ability to properly present its case at trial.'" *Id.* TCC argues in its brief that the death of Peter Leone, who prepared the First Variance Application, has prejudiced its case. In Ulsh's brief, however, he notes that Mr. Leone died on September 11, 2007, which was *before* the ZHB advertised the deemed approval which gave rise to Ulsh's right to appeal in the first place. Ulsh Br. at 23. TCC also argues that a lengthy delay is presumptively prejudicial. However, the Pennsylvania Supreme Court in *Jacobs* stated:

> It is unnecessary to presume prejudice because the defendant is free to present evidence of actual prejudice. In cases where no activity has occurred for a period of two years, but the defendant has not lost his ability to adequately prepare a defense, it serves no equitable purpose to dismiss the plaintiff's case solely due to the passage of time.

*Jacobs*, 551 Pa. at 357–58, 710 A.2d at 1102. In this case, TCC was free to present evidence of actual prejudice in the form of its lost ability to defend Ulsh's appeal. Since it presented no such evidence, this requirement for *non pros* was not met.

Because Ulsh proceeded with reasonable promptitude, had a compelling reason for his decision to await the results of *Snyder*, and there was no evidence that TCC was unable to adequately prepare a defense of Ulsh's appeal as a result of the delay, the requisite factors for granting judgment of *non pros* were not met. The trial court, therefore, properly denied TCC's petition.

Next, TCC argues that the trial court denied TCC's due process rights and/or erred as a matter of law by failing to schedule and conduct a separate *de novo* hearing and make substantive findings of fact on Ulsh's appeal, rather than reversing the deemed approval of the variance as a result of the hearing to address the request for *non pros*. We agree that the trial court erred in not making substantive findings of fact.

■ This Court has recognized that the "deemed approval" language in Section 908(9) of the Pennsylvania Municipalities Planning Code (MPC),[6] 53 P.S. § 10908(9) means the application will be deemed approved by operation of law when a municipality fails to timely act on a land use application. *In re Deemed Approved Conditional Use*, 975 A.2d 1193 (Pa.Cmwlth. 2009). A zoning hearing board's findings are, accordingly, rendered irrelevant. *See Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587 (Pa.Cmwlth.2008).[7] In addi-

---

6. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

7. There is no requirement that, in order to secure a deemed approval, an applicant must also file a statutory appeal or mandamus ac-

tion. A statutory appeal or mandamus action are permitted, however, to enforce the deemed approval against a government body. *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958

tion, Section 908(9) of the MPC provides that "[n]othing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction." Based upon that language, this Court has stated that "a deemed zoning board approval no more cuts off the right to an appeal on the merits than would a timely board decision approving an application." *Gryshuk v. Kolb*, 685 A.2d 629, 631 (Pa.Cmwlth.1996), *aff'd after remand*, 724 A.2d 1010 (Pa. Cmwlth.1998). Accordingly, the timely appeal of a deemed approval is an appeal of the merits of a variance approval in the same manner as an appeal of a timely board decision approving a variance application.

■ Since an appeal by an interested party of a deemed approval is a challenge to the merits of a variance application, and once a deemed approval is granted, a zoning hearing board's findings are rendered irrelevant, the trial court is obligated to review the merits of the application and issue its own findings of fact and conclusions of law. *Nextel Partners; Gryshuk.*

■ In this case, the trial court stated that it "cannot agree with TCC's suggestion that the Ulsh and Snyder appeals are completely different;" they were *both* approved and, since the Commonwealth Court "concluded that TCC is not legally entitled to *any* approval," regardless of how TCC obtained its variance approval, it "is legally improper." TCC Br. Exh. A at 7. These points were made relative to the trial court's examination of the "compelling reason for delay" prong of the *non pros*

analysis. Thereafter, the trial court stated, "[c]onsistent with this ruling, this Court takes the additional measure of reversing the deemed approval of the variance at issue in the instant case, as it is directly controlled by *Snyder*. . . ." TCC Br. Exh. A at 9. It is clear that the trial court did not make specific findings of fact as to the merits of the specific application underlying Ulsh's appeal. Therefore, the trial court denied TCC's due process rights and/or erred as a matter of law by failing to make substantive findings of fact, specifically as to Ulsh's appeal. With respect to the argument that the trial court is required to conduct a *de novo* hearing, however, we hold that the question of whether to schedule a hearing or to proceed on the record made before the ZHB is a matter to be left at the trial court's discretion.

■ Finally, TCC argues on appeal that the trial court erred by interpreting *Snyder* to support its conclusion that TCC is not entitled to *any* approval. We agree. *Snyder* was before this Court on the merits of the ZHB's decision approving the Second Variance Application. This Court examined whether the ZHB, in approving the variance, properly reviewed the request under Section 910.2(a) of the MPC, 53 P.S. § 10910.2(a).[8] Because this Court found that TCC failed to establish that the property was subject to unnecessary hardship, it declared that the ZHB improperly approved the variance request. This Court did not specifically address the deemed approval of the First Variance Application in *Snyder*.[9] Since the deemed

A.2d 587 (Pa.Cmwlth.2008); *see also Magyar v. Zoning Hearing Bd. of Lewis Twp.*, 885 A.2d 123 (Pa.Cmwlth.2005).

8. Added by Section 89 of the Act of December 21, 1988, P.L. 1329.

9. Since *Snyder* and this appeal address the same variance, it stands to reason that TCC's defense of Ulsh's appeal on the merits would be the same as that posed before the trial court and this Court relative to *Snyder*. TCC is collaterally estopped from litigating the same defense. However, since TCC was enti-

approval was not before us in *Snyder*, the trial court erred to the extent that it interpreted *Snyder* as compelling its conclusion that TCC is not entitled to *any* approval.

Based upon the foregoing, we hold that the trial court properly denied TCC's petition for judgment of *non pros*. We further hold that the trial court erred by rendering a decision on the merits of Ulsh's land use appeal based on the hearing to address the request for *non pros*. Specifically, the trial court erred by failing to make substantive findings of fact to support its decision to reverse the deemed approval of the variance, and by interpreting *Snyder* as compelling its conclusion that TCC is not entitled to *any* approval. Accordingly, Ulsh's appeal is hereby remanded for proceedings consistent with this Court's Opinion.

President Judge LEADBETTER dissents.

### ORDER

AND NOW, this 26th day of April, 2011, the portion of the June 25, 2010 order of the Court of Common Pleas of Dauphin County denying Triple Crown Corporation's petition for judgment of *non pros* is affirmed. The portion of the trial court's order rendering a decision as to the merits of deemed approval is vacated, and that matter is remanded to the Court of Common Pleas for proceedings consistent with this Court's Opinion.

Jurisdiction relinquished.

tled to a hearing on the merits of the deemed approval, it must have the opportunity to again make its case for entitlement to the variance at issue, separate and apart from the prior litigated defense of unnecessary hardship.