IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The City of Clairton, PA,                    :
                    Appellant                :
                                             :   No.  1525 C.D. 2018
            v.                               :
                                             :   Argued:  May 6, 2019
Zoning Hearing Board of the City of          :
Clairton, PA, and Cornerstone                :
Residence, Inc.                              :
                                             :
            v.                               :
                                             :
Zoning Hearing Board of the City of          :
Clairton, PA and George Glagola,             :
City of Clairton Zoning Officer              :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  May 31, 2019


        The City of Clairton, Pennsylvania (City) appeals from the October 30, 2018 order of the Court of Common Pleas of Allegheny County (trial court), which held that the application of Cornerstone Residence, Inc. (Cornerstone) for an occupancy permit was deemed approved with the express condition that no residents will be confined on Cornerstone's premises by court order.

**Facts and Procedural History**

Cornerstone owns a property located at 622 Delaware Avenue in the City (the Property). As noted by the trial court, and based on Cornerstone's application, the Property is located in a residential area, zoned as an R-2 medium density zoning district. The Property consists of a single-family dwelling, which is a permitted use in the R-2 zoning district. Cornerstone sought to utilize the Property to provide residential living in a single-family setting to those who are disabled, as defined by the Fair Housing Amendments Act of 1988 (Fair Housing Act),[1] and in need of such residence to live independently as they recover from drug and/or alcohol addiction. (Trial court op. at 1-2.)

On December 14, 2017, Cornerstone filed an application with the City's Zoning Officer seeking an occupancy permit for a single-family dwelling on the Property. Cornerstone's application reveals that the Property contains a former church and rectory and that Cornerstone only sought to utilize the former rectory for a sober living residence that will house 8 to 10 disabled residents along with a house manager and will be funded in part by charges to the residents for expenses. (Reproduced Record (R.R.) at 6a, 12a.) The Zoning Officer took no action and on January 17, 2018, Cornerstone filed a notice of appeal with the City's Zoning Hearing Board (Board). In its notice of appeal, Cornerstone alternatively suggested that if its use could not be considered a single-family dwelling, but instead a group home, the Fair Housing Act permits occupancy by persons with disabilities as a single family and, hence, it would still be a permissible use in the R-2 zoning district. (R.R. at 16a-17a.)

---

[1] 42 U.S.C. §§3601 – 3631.

However, the Board failed to conduct a hearing within 60 days as required by section 908(1.2) of the Municipalities Planning Code (MPC).[2] On April 25, 2018, Cornerstone filed a complaint in mandamus against the Board seeking a deemed approval. At the same time, Cornerstone provided public notice of the deemed approval through newspaper advertisements and a posting on the premises. The City responded by filing a land use appeal with the trial court.

In its land use appeal, the City argued that the deemed approval provisions of the MPC did not apply because the Board had no jurisdiction over Cornerstone's application; Cornerstone's appeal to the Board was premature, *i.e.*, occurred before the Zoning Officer was required to render a decision; Cornerstone's proposed use failed on the merits because it did not meet the definition of a single-family dwelling and, therefore, was not permitted by right in an R-2 zoning district; Cornerstone's proposed use failed on the merits because it was a potential conditional use, which is not governed by the Zoning Officer or the Board; and Cornerstone's proposed use failed on the merits because it was not entitled to a reasonable accommodation under federal or state law since its proposed residents do not constitute a protected class. (R.R. at 9a.) The trial court consolidated the City's land use appeal and Cornerstone's mandamus action. (Trial court op. at 2.)

The trial court did not take any additional evidence. Following briefing and oral argument, the trial court issued a decision on October 30, 2018, holding that Cornerstone's application was deemed approved. Because Cornerstone represented to the trial court during oral argument that it had no intention of permitting any residents to live at the Property who were confined there by court order, the trial court included this as an express condition of the deemed approval. The trial court reasoned that the

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10908(1.2).

3

Board's failure to conduct a hearing within 60 days resulted in a deemed approval of Cornerstone's application. The trial court rejected the City's argument that the Board lacked jurisdiction because Cornerstone actually sought a conditional use as a group home, noting that the Board had jurisdiction under section 909.1(a)(3) of the MPC[3] over appeals from the determination of a zoning officer, including the failure to act on an application. The trial court relied on this Court's decision in *Gibraltar Rock, Inc. v. New Hanover Township Zoning Hearing Board*, 68 A.3d 1012, 1018 (Pa. Cmwlth. 2013), wherein we stated that when an applicant seeks deemed approval of a zoning application, "[t]he merits of the application are irrelevant; a board's inaction will subject it to a writ of mandamus ordering a deemed decision."[4] (Trial court op. at 2-4.) The City thereafter filed a notice of appeal with this Court.

## Discussion

On appeal, the City raises three arguments. First, the City argues that the trial court erred by failing to conduct a *de novo* review, *i.e.*, issuing its own findings of fact and conclusions of law. Second, the City argues that the trial court lacked jurisdiction to approve Cornerstone's application because Cornerstone failed to exhaust administrative remedies. Finally, the City argues that the trial court erred in ordering that Cornerstone's application was deemed approved.[5]

---

[3] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1(a)(3).

[4] The trial court failed to recognize that this statement had no relation to an appeal from a deemed approval. Indeed, we later explained in *Gibraltar Rock, Inc.*, that in the event of such an appeal, a common pleas court "must hear the matter *de novo* and render its own findings of fact and conclusions of law." *Id.* at 1020.

[5] The Board has filed a brief in this matter with arguments that essentially mirror those raised by the City.

We begin by noting that whether an incorrect legal standard was applied is a question of law and, as such, an appellate court's standard of review is *de novo* and the scope of review is plenary. *Braun v. Wal-Mart Stores, Inc.*, 106 A.3d 656, 663 n.8 (Pa. 2014). The issues regarding exhaustion of remedies, interpretation of the MPC, and whether a proposed use falls within a given category specified in a zoning ordinance similarly involve questions of law for which the same standard of review applies. *See Newtown Square East, L.P. v. Township of Newtown*, 101 A.3d 37, 42 (Pa. 2014) ("To the extent that [the] issues before this Court rest on interpretation of the MPC, they present a question of law for which our standard of review is *de novo* and our scope is plenary."); *Sands Bethworks Gaming, LLC v. Pennsylvania Department of Revenue*, 958 A.2d 125, 129 n.6 (Pa. Cmwlth. 2008), *aff'd*, 968 A.2d 763 (Pa. 2009) ("Because the issue [of exhaustion of internal administrative remedies] involves a question of law, our scope of review is plenary."); *Tennyson v. Zoning Hearing Board*, 952 A.2d 739, 744-45 (Pa. Cmwlth. 2008) ("Whether a proposed use, as factually described in an application or in testimony, falls within a given category specified in a zoning ordinance is a question of law . . . . Thus, our review is plenary.").

### *De Novo* Standard of Review

As noted above, the City first argues that the trial court erred by failing to conduct a *de novo* review, *i.e.*, issuing its own findings of fact and conclusions of law. Had the trial court applied the correct standard of review, the City argues that Cornerstone's application would fail because its proposed use was not a single-family dwelling as alleged, but rather a group home.

We first address the issue of the deemed approval. Upon receipt of an application, section 908(1.2) of the MPC governs and, in pertinent part, provides, "The

first hearing before the board or hearing officer shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an extension of time." 53 P.S. §10908(1.2). However, where the board does not timely act upon the application, section 908(9) applies. Specifically section 908(9) provides that "where the board fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time." 53 P.S. §10908(9). Here, Cornerstone posted notice of the deemed approval for failure of the Board to hold a hearing. There is no dispute that the Board failed to conduct a hearing with respect to Cornerstone's application seeking an occupancy permit for a single-family dwelling on the Property within 60 days as required by section 908(1.2). Hence, in accordance with section 908(9), the Board is deemed to have ruled in favor of Cornerstone.

Nevertheless, a deemed approval is not "self-effectuating," *Maple Street A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319, 323 (Pa. Cmwlth. 2010), and section 908(9) further imposes a duty on the applicant to give public notice of a deemed approval whenever the Board fails to do so. In this case, Cornerstone, the applicant, provided this public notice by posting notice of the deemed approval in the Pittsburgh Post-Gazette on May 4 and 11, 2018. (R.R. at 8a.) Indeed, the City responded to such notice by filing its land use appeal with the trial court.

Both the City and Cornerstone agree that, once an interested party appeals a deemed zoning application approval, a reviewing court must determine the merits of the application and issue its own findings of fact and conclusions of law. *Gryshuk v. Kolb*, 685 A.2d 629, 634 (Pa. Cmwlth. 1996). In *Gryshuk*, the landowners operated a

6

gun club on their property in Upper Hanover Township. After being cited by the Hanover Township Zoning Officer for constructing clay target cages/shooting stations within 100 feet of their property setback area, the landowners filed an application for a variance with the Upper Hanover Township Zoning Hearing Board. The Zoning Hearing Board conducted hearings on October 12 and 19, 1994, and delivered an oral decision at a meeting on December 14, 1994. However, the Zoning Hearing Board did not issue a written decision until January 18, 1995. Approximately one week later, the landowners notified the Zoning Hearing Board that they were asserting a deemed approval of their variance application due to the delay in the issuance of a written decision, and they proceeded to file a mandamus action with the common pleas court. Around the same time, intervening neighbors filed a notice of appeal from the deemed approval.

The common pleas court ultimately granted the landowners' mandamus petition and scheduled argument relating to the neighbors' appeal. The common pleas court took no additional evidence and later granted the neighbors' appeal, thereby reversing the deemed approval. On appeal, this Court concluded that the granting of the landowners' mandamus action was correct, but that the common pleas court erred in conducting a substantial evidence review of the Zoning Hearing Board's decision instead of making its own findings of fact. We rejected arguments from Upper Hanover Township that the common pleas court did, in fact, make its own findings and, alternatively, that any error in applying the proper standard of review was harmless. We stressed that a common pleas court is the fact-finder when it reviews a deemed zoning hearing board approval. However, we noted that the common pleas court merely cited the findings and conclusions of the Zoning Hearing Board "extensively in its opinion and purported to review them for substantial evidence." *Id.* Hence, we

7

vacated the common pleas court's decision and remanded for application of the proper standard of review. *See also DeSantis v. Zoning Hearing Board of City of Aliquippa*, 53 A.3d 959, 962 (Pa. Cmwlth. 2012) (vacating the trial court's order because it "erred in conducting appellate, as opposed to *de novo*, review of the Board's deemed approval"); *Ulsh v. Zoning Hearing Board*, 22 A.3d 244, 252 (Pa. Cmwlth. 2011) (reversing the common pleas court because it failed to make substantive findings of fact to support its decision to reverse the deemed approval of a variance); *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587, 596 (Pa. Cmwlth. 2008) (reiterating, in the context of whether a deemed approval did occur, that "when a deemed approval occurs, a board's findings are nullified and the trial court is required to make its own findings").

The parties here disagree, however, as to whether the trial court applied the correct standard and made its own findings. Cornerstone relies on the following excerpt from the trial court decision as meeting this standard:

> The Property is a single-family dwelling which is a permitted use in the R[-]2 zoning district. Cornerstone seeks to provide residential living in a single-family setting to those who are disabled, as defined by the Fair Housing Act, and in need of such residency to live independently as they recover from drug and/or alcohol addiction.

(Trial court op. at 2.) The City argues that the excerpt relied upon by Cornerstone merely represents introductory, background information on the case and does not constitute findings of fact and conclusions of law. The City also notes that the trial court cited to the general appellate standard of review in its opinion, *i.e.*, "whether the Board committed an error of law, abused its discretion or made findings not supported by substantial evidence." (Trial court op. at 2-3.) We agree with the City in this regard.

8

As the City notes in its brief, and Cornerstone agrees, "[T]he crux of this long-running dispute is whether Cornerstone's proposed use fits the definition of a single-family use, and, as such, may be permitted" in an R-2 zoning district. (City's Brief at 8.) However, the trial court did not take additional evidence or hear testimony from any witnesses and did not engage in an analysis of the definition of a single-family dwelling or application of the Fair Housing Act. Moreover, the Board did not hold a hearing, so the trial court had no testimony or evidence to review, and upon which to rely, in rendering findings of fact and conclusions of law. As the City notes in its brief, Cornerstone's application contained many characteristics, never addressed by the trial court, that do not appear to be consistent with a single-family dwelling use, such as, the Property will be used as a sober living residence for men recovering from addiction to alcohol/drugs; the Property will house 8-10 disabled residents; oversight will be provided by Cornerstone, including its president Joyce Douglass; the residence will include a house manager; residents will be charged for necessary expenses; and residency is expected to be for a substantial period or permanent.

As such, we cannot view the trial court's statements as findings of fact or conclusions of law regarding whether the use proposed by Cornerstone at the Property constituted a single-family use and what impact, if any, the Fair Housing Act has on Cornerstone's application. Indeed, as the City notes in its brief, at a later hearing in this case relating to a motion filed by Cornerstone to vacate the automatic supersedeas, the trial court essentially denied that it had previously rendered any determination on the merits. Specifically, in addressing the requirement of Cornerstone's likelihood of success on the merits, counsel for the City disputed an allegation by Cornerstone's counsel that the trial court's October 30, 2018 opinion had determined that Cornerstone's application met the standard for single-family use. The trial court

9

responded "I didn't think it did." (R.R. at 230a.) Moreover, we disagree with Cornerstone's contention that the trial court's discussion of the appellate standard was limited to consideration of its mandamus action and, at most, constituted "harmless error." (Brief of Cornerstone at 9.) Thus, the matter must be remanded to the trial court to apply the proper standard of review.

**Exhaustion of Administrative Remedies**

The City next argues that the trial court lacked jurisdiction to approve Cornerstone's application because Cornerstone failed to exhaust administrative remedies. More specifically, the City argues that Cornerstone failed to go before the City's Planning Commission and City Council to have its application approved as a conditional use and that Cornerstone's appeal to the Board was premature.

Generally, a court lacks jurisdiction where administrative remedies are not exhausted prior to seeking judicial review. *Birch Hills Residence v. Department of Public Welfare*, 943 A.2d 357, 361-62 (Pa. Cmwlth. 2008) ("[A] party challenging administrative decision-making must first exhaust administrative remedies before seeking judicial review; courts lack jurisdiction where such remedies exist."). "The doctrine of exhaustion of administrative remedies requires a party to exhaust all adequate and available administrative remedies before the right of judicial review arises." *Heffner Funeral Chapel & Crematory, Inc. v. Department of State, Bureau of Professional and Occupational Affairs*, 824 A.2d 397, 400 (Pa. Cmwlth. 2003). Additionally, we have described this doctrine as a "court-made rule intended to prevent premature judicial intervention into the administrative process." *Id.*

The City's conditional use argument is premised on its allegation that Cornerstone's proposed use did not meet the definition of a single-family dwelling, but

10

instead constituted a group home use. The City notes that a group home use is permitted as a conditional use in an R-2 zoning district under the local zoning ordinance, but must first be presented to the City's Planning Commission and then be approved by City Council, not the Zoning Officer or the Board. Cornerstone responds that section 337-39(B) of the local zoning ordinance provides that "The Zoning Officer . . . shall . . . [r]eview all applications for zoning permits and zoning occupancy permits, and issue permits when there is compliance with the provisions of this chapter," R.R. at 100a, and that the Board retains exclusive jurisdiction to review the Zoning Officer's decisions under section 909.1(a)(3) of the MPC. This section provides that a zoning hearing board "shall have exclusive jurisdiction to hear and render final adjudications in the following matters . . . appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot." 53 P.S. §10909.1(a)(3).

The City's argument relating to Cornerstone's premature appeal focuses on Cornerstone's January 17, 2018 appeal to the Board, which was submitted only 34 days after it submitted the application for an occupancy permit to the Zoning Officer. The City avers that the local zoning ordinance does not require a Zoning Officer to render a decision on such an application within 30 days, thereby rendering Cornerstone's appeal to the Board as premature. Cornerstone responds that the Board has jurisdiction under section 909.1(a)(3) of the MPC over appeals from the determination of the Zoning Officer, including the failure to act on an application, and that the City cannot alter this section by not prescribing a specific amount of time for the Zoning Officer to act on an application.

11

This Court makes no determination on these issues, but instead directs the trial court to make further findings of fact and conclusions of law regarding the same on remand.

**Deemed Approval**

Finally, the City argues that the trial court erred in ordering that Cornerstone's application was deemed approved as a result of the Board's failure to hold a hearing within the required 60 days. While the parties do not disagree that the Board did not hold a hearing within 60 days of the filing of Cornerstone's application, the City contends this is irrelevant because the Board lacks jurisdiction over conditional uses, which was the use described in the application. The City's argument is, thus, premised on the Board's lack of jurisdiction over Cornerstone's application, which, as noted above, must be addressed on remand.

**Conclusion**

Based upon the above, we must remand to the trial court to first address the City's claim that Cornerstone's appeal of the Zoning Officer's decision to the Board was premature. If the trial court rejects this argument by the City, it must next address the type of use sought herein by Cornerstone, *i.e.*, a single-family or group home use, the latter being subject to a different procedural posture which would require Cornerstone to exhaust its administrative remedies related thereto. Finally, if the trial court accepts the proposed use as a single-family residential dwelling, it must then apply the proper standard of review and consider the City's appeal of the Board's deemed approval *de novo*, *i.e.*, issue its own findings of fact and conclusions of law with respect to the merits of Cornerstone's application. In considering this issue, the

12

trial court should address the impact, if any, of the Fair Housing Act on Cornerstone's application.

Accordingly, the order of the trial court is vacated and the matter is remanded to the trial court for further findings and conclusions consistent with this opinion.

_____

PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The City of Clairton, PA,        :
             Appellant    :
                       :   No. 1525 C.D. 2018
          v.           :
                       :
Zoning Hearing Board of the City of  :
Clairton, PA, and Cornerstone    :
Residence, Inc.            :
                       :
          v.           :
                       :
Zoning Hearing Board of the City of  :
Clairton, PA and George Glagola,   :
City of Clairton Zoning Officer    :

## *ORDER*

AND NOW, this 31ˢᵗ day of May, 2019, the order of the Court of Common Pleas of Allegheny County (trial court), dated October 30, 2018, is hereby vacated. The matter is remanded to the trial court for further findings of fact and conclusions of law consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge